No. 43,413

Edwin E. Knisley, and Hazel F. Knisley, *Appellants*, v. A. L. Wright, Jr., d/b/a W. W. Trailer Sales, *Appellee*.

(387 P. 2d 154)

Opinion filed December 7, 1963.

*Tom Harley*, of Wichita, argued the cause, and *Lester Wilkinson* and *George E. Grist*, both of Wichita, were with him on the briefs for the appellants.

*Gerald Sawatzky*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes, Robert L. Howard*, and *Charles J. Woodin*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This appeal stems from a controversy over the validity of the sale of a new house trailer under the provisions of G. S. 1959 Supp., 8-135.

The case was submitted to the district court on a stipulation of facts which will be highly summarized for purposes of discussing the issues presented for review.

On June 10, 1959, defendant sold plaintiffs a new 1959 Tulsan house trailer for a cash price of $4,045.00, pursuant to a conditional

sales contract. There was no down payment. The deferred payment balance was $5,377.63. As additional security plaintiffs gave defendant a real estate mortgage.

At the time of the sale defendant was actively engaged in the business of buying, selling or exchanging new house trailers, held a dealer's contract for the sale of Tulsan house trailers from the manufacturer, and had an established place of business in the City of Wichita.

The trailer was delivered to plaintiffs on June 12, 1959. Defendant also delivered to plaintiffs a manufacturer's statement of origin which was duly assigned to the plaintiffs. Plaintiffs never applied for or received a certificate of title to the house trailer.

Plaintiffs made payments totaling $765.00, the last payment being made on March 8, 1960. After April 8, 1960, the note, contract, and mortgage were in default.

On or about May 12, 1960, plaintiffs advised defendant they had a party interested in purchasing the house trailer and requested the defendant to consider such party if possible. Defendant then asked plaintiffs for the Kansas Certificate of Title. They informed him they had never applied for or obtained a Kansas Certificate of Title and that they still had the statement of origin. Thereupon plaintiffs executed a power of attorney to defendant and gave him the statement of origin and requested that he apply for issuance of the Kansas Certificate of Title in their names. In conformity with this request defendant procured the certificate of title in their names and made application for registration of the trailer.

Defendant while dealing in Mobil Homes had not registered with the Motor Vehicle Department of the State of Kansas as a registered or franchise dealer for the Tulsan Mobil Homes [had not made application for a dealer's license plate]. He became a registered franchise dealer on June 1, 1960. On June 8, 1960, the certificate of title to the trailer was issued to plaintiffs.

On or before May 26, 1960, because of plaintiffs' default, defendant repossessed the house trailer and posted notices of sale. On June 11, 1960, defendant purchased the trailer at the sale for $2,500.00. The sale was properly and legally consummated in all respects.

On June 14, 1960, plaintiffs brought an action to set aside the sale of the house trailer, together with the real estate mortgage securing the payment of the purchase price, and to recover payments

made in the sum of $765.00, on grounds that such sale was fraudulent and void under G. S. 1959 Supp., 8-135.

Defendant filed an answer and cross petition in which he sought judgment against the plaintiffs in the sum of $2,072.63 plus interest and the foreclosure of the mortgage on the real estate.

On September 26, 1962, the district court resolved the issues and rendered judgment for the defendant on his cross petition in the sum of $2,618.18 plus interest and ordered the mortgage foreclosed and the property therein described foreclosed and sold in the manner provided by law.

Thereupon plaintiffs perfected the instant appeal.

Turning to the merits of the appeal it may now be stated the appellants contend that in order to make a valid sale, a franchise dealer must apply for and obtain dealers license plates under the provisions of G. S. 1959 Supp., 8-136 ( *a* ) or register each new vehicle separately and deliver a certificate of title properly assigned for all vehicles sold as provided in G. S. 1959 Supp., 8-135.

The contentions thus advanced require consideration of the motor vehicle registration statutes in effect at the time of the transaction on June 10, 1959. For that reason no reference need be made to G. S. 1961 Supp.

G. S. 1959 Supp., 8-135 ( *b* ) provided in part:

". . . Upon the transfer and sale of any vehicle by any person or dealer, the new owner thereof shall, within ten (10) days from date of such transfer of said vehicle, make application to the department for registration of said vehicle and after such time it shall be unlawful for the owner or any other person to operate such vehicle upon the highways of this state unless said vehicle has been registered as provided in this act and for failure to make application for registration as provided in this section, a penalty of two dollars ($2) shall be added: . . ."

It will be noted that this provision places a responsibility on the "new owner" but none on the "dealer."

G. S. 1959 Supp., 8-135 ( *c* ), so far as here material, provided:

". . . Certificate of title: No vehicle required to be registered hereunder shall be registered or number plates issued therefor, either original issue, or duplicate, unless the applicant for registration thereof shall at the same time present satisfactory evidence of ownership and make application for an original certificate of title for such vehicle. (1) Said application for certificate of title shall be made by the owner or his agent upon a blank form to be furnished by the department and shall contain all liens or encumbrances thereon, and such other information as the department may require: . . ."

It should also be noted that the provision just quoted places

responsibility on the new owner as to proof of ownership but no responsibility is placed on the dealer.

G. S. 1959 Supp., 8-135 (c) (3) provided:

". . . Dealers shall execute, upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon, in accordance with form prescribed by the commission for all vehicles sold by them. Upon the presentation to the commission or its authorized agents of a bill of sale executed in the form prescribed, by a manufacturer or dealer for a new vehicle, sold in this state, a certificate of title shall be issued in accordance with the provisions of this act: *Provided, however,* That simultaneously with the application for certificate of title, there is also an application for registration, and in no other cases. . . ."

The foregoing provision places a responsibility upon the dealer to issue a bill of sale to the purchaser of a new vehicle. The dealer's responsibility ceases when the bill of sale is issued. It is then the responsibility of the purchaser to apply for a certificate of title and registration.

G. S. 1959 Supp., 8-135 (c) (6) provided:

". . . It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void. . . ."

This provision does not apply to dealers selling new vehicles because new vehicles are not required to be registered by the dealer unless he demonstrates, displays, or exhibits the vehicle on the highway.

G. S. 1959 Supp., 8-136, so far as here pertinent, provided:

"A manufacturer of or dealer in motor vehicles, trailers, or semitrailers, demonstrating, displaying or exhibiting any such vehicle upon any highway in lieu of registering each such vehicle, may obtain from the department, upon application therefor upon the proper official form, and payment of the fees required by law, and attached to each such vehicle, one (1) plate which shall bear thereon a distinctive number, also the name of this state, which may be abbreviated, and the year for which issued, together with the word 'dealer' or a distinguishing symbol indicating that such plate is issued to a manufacturer or dealer, and any such plate so issued, may during the calendar year for which issued, be transferred from one such vehicle to another owned or operated by such manufacturer or dealer. Such plate may be used in lieu of a regular plate for private automobile or service car, demonstrator, towing other motor vehicles and for all other purposes incidental to dealer's motor vehicle business, except . . ."

The provision last quoted placed no definite responsibility upon the new car dealer. He was given the privilege of obtaining a dealer's license plate to transfer from vehicle to vehicle rather than registering each new vehicle which he demonstrated, displayed, or exhibited on the highway. If new vehicles were not demonstrated on the highway no registration or license plate was required.

G. S. 1959 Supp., 8-126 (q) defined a "new car dealer" as follows:

" 'New car dealer.' Every person actively engaged in the business of buying, selling or exchanging new motor vehicles, and who holds a dealer's contract therefor from a manufacturer or distributor and who has an established place of business in this state."

The parties stipulated:

"That at the time of the aforesaid sale and at all times material hereto defendant was actively engaged in the business of buying, selling or exchanging new house trailers; that at such times he held a dealer's contract for the sale of Tulsan house trailers from the manufacturer thereof, and had an established place of business in the City of Wichita, Kansas."

Appellee being a "new car dealer" as defined by the statute could make a valid sale by executing and delivering to the purchaser "a bill of sale stating the lien or encumbrances thereon, in accordance with the form prescribed by the commission."

Appellants further contend that the manufacturer's statement with the assignment, which was delivered to them, did not constitute a bill of sale.

The record does not disclose that the State Highway Commission required any particular form of bill of sale. We must therefore examine the instrument in question for the purpose of determining whether it constitutes a bill of sale as that term is generally understood.

The instrument contained on its face the following:

"MANUFACTURER'S STATEMENT OF ORIGIN TO A MOTOR VEHICLE.

"The undersigned COMPANY hereby certifies that the new vehicle described below, the property of said COMPANY, has been transferred this 15th day of May, 1959, on Invoice No. 420 to W. & W. Trailer Sales whose address 1915 North Broadway, Wichita, Kansas.

"Manufacturer's Trade Name TULSAN   Year 1959

"Full Description Including Model 2 Bedroom 50'/10 wide Mobil Home Serial No. 50109420.

"Shipping weight 10,750

"This COMPANY further certifies, that this was the first transfer of such new vehicle in ordinary trade and commerce. [Signature of company is omittted.]"

"FIRST ASSIGNMENT

"FOR VALUE RECEIVED, the undersigned hereby transfers this Statement of Origin and the new vehicle described therein to Edwin E. and Hazel F. Knisley, address 5938 N. Seneca, Wichita, Kansas and certifies that the vehicle is new and has not been registered in this or any other state, he also warrants the title of said new vehicle at time of delivery, subject to the liens and encumbrances, if any, as set out below:

| Amt. of Lien | Date | To whom Due | Address |
|---|---|---|---|
| 5337.63 | 6/11/59 | W. W. Trailer Sales | Wichita, Kansas |

Dated    6-11 1959, at Wichita, Kansas

W. W. Trailer Sales                    By A. L. Wright, Jr. Owner
Transferor (Firm Name)                      Position
Dealer License No. 167"

The assignment was duly acknowledged.

The instrument now under consideration appears to meet all of the requirements of a bill of sale. The writing need not be in any particular form. It need only show an intent to make immediate transfer of the property for consideration.

The rule is stated in 77 C. J. S., Sales, p. 836 § 125:

"Except as otherwise prescribed by statute, it is not essential that the writing should be in any particular form as long as it shows an intent to transfe. the property for a consideration. The writing may be in the form of a receipt acknowledging payment of the consideration for the property therein described; but it must show a present transfer, although it is not essential that it should recite the fact of delivery of the property. The instrument should so describe the property as to furnish the means of identifying it with reasonable certainty. . . ."

In view of what has been heretofore stated we are forced to conclude (1) that the appellee was a new car dealer, as defined in G. S. 1959 Supp., 8-126 ($q$); (2) that as such a dealer he could make a valid sale of a new vehicle by executing and delivering a bill of sale stating the liens or encumbrances on such vehicle; (3) that he consummated such a sale with the appellants; and (4) that the trial court's action in holding the contract of sale valid and in rendering judgment against the appellants, in accord with its terms and conditions, was proper.

The judgment is affirmed.