No. 45,850

Gary L. Green and Dawn C. Green, *Appellants* and *Cross-Appellees*, v. Devoe Sales, Inc., and Devoe Treadwell, *Appellees*, and *Cross-Appellants*.

(477 P. 2d 944)

Opinion filed December 12, 1970.

*Fred R. Vieux*, of Augusta, was on the brief for the appellant and cross-appellees.

*Cecil E. Merkel* and *James L. Pinkerton*, of the firm of Hayes & Merkel of Wichita, were on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

Kaul, J.: This is an action for damages instituted by plaintiffs-appellants as purchasers of a new mobile home against defendants-appellees who operated a mobile home dealership in Wichita. Apparently, defendant DeVoe Treadwell owned and operated the defendant DeVoe Sales, Inc. For convenience appellants will be referred to as Greens or plaintiffs and appellees as DeVoe or defendants.

After a trial to the court judgment was entered for plaintiffs in the amount of $250.45. Plaintiffs filed motions to set aside findings or in the alternative to grant a new trial. The motions were overruled. Thereafter plaintiffs appealed and defendants cross-appealed.

We are first confronted with defendants' motion to dismiss for failure on the part of plaintiffs to comply with rules of this court governing the preparation of the record on appeal. When filed, the motion was denied with leave granted to defendants to renew when the case was heard on the merits. In particular, defendants point out that plaintiffs failed to comply with the requirements of Supreme Court Rule No. 6 (*d*) (203 Kan. xxiv, xxv) as to the manner and form in which points on appeal must be stated. Defendants further show that plaintiffs' brief is not reproduced in content and form as directed by Rule No. 8 (*b*) (203 Kan. xxviii.)

An examination of the record and plaintiffs' brief reveals that defendants have good cause to complain. In this connection we direct attention to what this court has said concerning the responsibility, particularly of appellants, in preparing the record and reproducing briefs on appeal. (See *Beams v. Werth*, 200 Kan. 532, 438 P. 2d 957; *State, ex rel., v. Doerschlag*, 197 Kan. 302, 416 P. 2d 257; *Scrinopskie v. Arthur Murray, Inc.*, 195 Kan. 278, 403 P. 2d 1001; and *Bolyard v. Zimbelman*, 195 Kan. 130, 402 P. 2d 813.)

Failure to fully comply with the rules pertaining to the form and content of the record and brief adds to the burden of this court and often unfairly puts opposing counsel in a disadvantageous position. In this case, our task is further complicated by the lack of any opportunity to be enlightened on oral argument since the appeal was submitted by agreement of the parties. Even though the manner in which plaintiffs have presented this appeal leaves much to be desired; in the interest of justice we have undertaken to dispose of the issues on their merits.

As a basis for their action, plaintiffs allege the sale of the new mobile home was fraudulent and void under K. S. A. 8-135 [now 1970 Supp.]. Plaintiffs also sued for puntive damages alleging defendants failed to purchase a policy of insurance on the mobile home, as required by the contract of sale. Defendants cross-claimed for damages based on a deficiency on the resale of the mobile home after it was repossessed by defendants.

In the course of the transactions, resulting in the purchase of the mobile home, two instruments were drawn up by DeVoe and

signed by the Greens. The first was entitled "Customer's Purchase Agreement for Mobilehome, Travel-Trailer or Vacation Unit." It set out what appears to be the terms of the sale and trade-in allowance. The purchase agreement was not signed by anyone for DeVoe and carried the notation "Deal Binding if Customer Decides to Buy." At the trial the customer's purchase agreement was introduced by Greens and marked plaintiffs' Exhibit 1.

The second instrument referred to was signed by both parties. It is a document entitled "Retail Installment Contract," the words "Purchase Money Chattel Mortgage" appear in parenthesis immediately underneath the heading.

The contract described the mobile home and listed the cash sale price $4,051.80, the down payment $685.45, insurance $304.00, finance charge $2,207.01, and a total time payment balance of $6,878.76. The contract further provided for 84 monthly installments in the amount of $81.89 each. The contract was offered into evidence by DeVoe and marked defendant's Exhibit 1.

DeVoe assigned the contract with recourse to the Rose Hill State Bank.

Apparently, plaintiffs lived in the mobile home until sometime in March 1968, when payments became two months in default. The bank reassigned the contract to DeVoe who then repossessed the mobile home. The evidence shows that at the time of repossession there was a balance due of $3,687.92 after discounting future interest payments. The mobile home was sold for $3,706.61 with expenses of the sale amounting to $767.56 resulting in net receipts of $2,939.05 and a deficiency of $748.87 upon which DeVoe based its counterclaim.

Plaintiffs' evidence consisted of the testimony of Mr. and Mrs. Green. Defendants offered no testimony, but relied upon the direct and cross-examination of plaintiffs' witnesses and the contract of sale as evidence to support their position. Both parties relied to some extent on interrogatories submitted by plaintiffs to defendants and stipulations entered into at the pretrial conference.

At the conclusion of the trial the court announced its findings as follows:

"THE COURT: Well, in addition to the stipulation I am going to find that Defendants' Exhibit 1 is a bill of sale that meets the requirements of the State of Kansas. Included within that bill of sale and Plaintiffs' Exhibit 1, there is an agreement on the part of the defendants, Devoe Sales, Inc., to purchase insurance for and on behalf of the plaintiffs, and that was included in the pay-

ments. This was not done by the defendant, Devoe Sales, Inc., and amounts to a breach of contract on the part of that corporation. By that breach they are not entitled to any damages for the alleged deficiency. In like manner the plaintiffs did reside in the mobile home and did receive value from residing in the home itself in regard to the payments. I am going to award judgment in favor of the plaintiffs. I think it's rather serious. I don't think there is any showing of intentional fraud that would allow punitive damages. On the basis of the quantum error of this case, I am going to allow judgment in favor of the plaintiffs and against the defendants for the actual amount of money that was paid down, which was $250.45 and the costs of the action. Mr. Vieux: We aren't recovering the installment payments? The Court: No, sir. As far as I am concerned that would be unjust. They did reside in the trailer. I am going to give them judgment for $250."

The underlying question on appeal is whether the contract of sale, identified as defendants' Exhibit 1, amounts to a bill of sale within the requirements of K. S. A. 8-135 (c) (3), [now 1970 Supp.], of the Registration of Motor Vehicles Act, which reads:

"Dealers shall execute, upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon, in accordance with form prescribed by the commission for all vehicles sold by them. Upon the presentation to the commission or its authorized agents of a bill of sale executed in the form prescribed, by a manufacturer or dealer for a new vehicle, sold in this state, a certificate of title shall be issued in accordance with the provisions of this act: *Provided, however*, That simultaneously with the application for certificate of title, there is also an application for registration, and in no other cases."

Greens contend the trial court erred in finding the contract (defendants' Exhibit 1) to be a bill of sale and, further, emphatically point out that the trial court did not find that it had been delivered to them even though it might have amounted to a bill of sale. Greens further contend that the undisputed evidence shows that defendants failed to purchase insurance on the trailer, as required by the contract, and that as a matter of law they are entitled to judgment for compensatory damages for the full amount of their trade-in down payment and installment payments totaling $1,728.13 and in addition a judgment for punitive damages in the amount of $10,000.00.

Defendants concede the trial court made no express finding that the bill of sale was delivered but contend that such finding is implicit in the decision. Defendants further argue that even though the sale is void, nevertheless they are entitled to an offset against the amount paid by Greens by reason of the benefit to Greens from living in the mobile home for a period of sixteen months.

We turn to the question whether the sale herein was fraudulent and void under the provisions of 8-135 (c) (3), *supra*, by reason of DeVoe's failure to execute and deliver a bill of sale to the new mobile home.

Greens rely on our decision in *Wilcox Trailer Sales, Inc. v. Miller*, 200 Kan. 315, 436 P. 2d 860. Wilcox, a dealer, sold a new mobile home to Patricia Miller. Mrs. Miller traded in a used Midjet house trailer as a down payment and executed a purchase money mortgage and note for the balance. The mortgage and note required Mrs. Miller to make monthly payments in the amount of $61.00. She made two monthly payments and thereafter defaulted. Wilcox brought an action in replevin to recover possession of the new mobile home. Mrs. Miller counterclaimed alleging that Wilcox failed to execute and deliver to her a certificate of title, bill of sale, or other indicia of ownership in violation of K. S. A. 8-135 (c) (6), [now 1970 Supp.], and asked the court to find the sale fraudulent and void, and for the return of all the consideration paid by her to Wilcox. It was conceded that Wilcox did not convey title by a bill of sale or any other indicia of ownership. The trial court found the sale fraudulent and void under 8-135 and gave Mrs. Miller judgment on her counterclaim for the value of her trade-in and the amount of monthly payments made by her. On appeal this court affirmed the trial court's judgment on Mrs. Miller's counterclaim and held:

"The provisions of K. S. A. 8-135 (c) (3) are examined and construed, and it is *held* that with respect to the sale of a new vehicle by a dealer as defined in K. S. A. 8-126 (q) and 8-178 (b) 2, the statute does not contemplate the existence of a certificate of title for such vehicle. Its provisions require that the dealer shall execute, upon delivery of such vehicle to the purchaser, a bill of sale stating the lien or encumbrances thereon. Upon presentation to the Kansas Highway Commission or its authorized agent of such bill of sale for the new vehicle, a certificate of title shall issue in accordance with the provisions of the Registration of Motor Vehicles Act.

"Pursuant to provisions of the Registration of Motor Vehicles Act, a mobile home is a vehicle and is required to be registered with the vehicle department of the highway commission. (K. S. A. 8-126 [a] [h]; 8-127; 8-129; 8-143 [2] [b].)

"The provisions of K. S. A. 8-135 (c) (3) and (6) are examined and construed and it is *held* that the words 'bill of sale' as used in 8-135 (c) (3) have the same connotation as the words 'certificate of title' as used in 8-135 (c) (6), and, as thus construed, it is unlawful for a dealer to sell a new vehicle required to be registered under the Registration of Motor Vehicles Act, unless, at the time of delivery thereof the dealer shall execute to the purchaser a bill of sale

as required to be executed, and the sale of such new vehicle, without the execution of such bill of sale is fraudulent and void." (Syl. ¶¶ 1, 2 and 3.)

In a comprehensive opinion, Justice Fatzer speaking for the court fully sets out the rationale of the holding in *Wilcox*. The statutory scheme governing a dealer's duty, in the case of a sale of a new vehicle to execute a bill of sale stating liens and encumbrances under the Registration of Motor Vehicles Act, is explained and previous decisions of this court supporting the holding are cited and discussed.

It is unnecessary to lengthen this opinion by an extended discussion of our previous decisions but, to give emphasis to our construction of this part of the Registration of Motor Vehicles Act, we say again that the provisions of the Act mean exactly what they say; that they are to be literally interpreted and strictly enforced; and that failure to comply therewith renders the sale of a vehicle required to be registered under the Act fraudulent and void. (*Wilcox Trailer Sales, Inc. v. Miller*, supra, and cases cited therein at page 321.)

DeVoe relies on *Knisley v. Wright*, 192 Kan. 279, 387 P. 2d 154. It is argued the contract of sale (defendants' Exhibit 1) meets the requirements of a bill of sale set out in *Knisley*. In *Knisley* a "Manufacturer's Statement of Origin to a Motor Vehicle," assigned by a dealer to the purchaser, was held to be the equivalent of a bill of sale. The assignment is reproduced at page 284 of the opinion; by its terms the manufacturer's statement of origin is transferred to the purchaser by the dealer who certified the vehicle was new and had not been registered, and that the title was warranted subject to the lien which was fully described. In the opinion it is noted the assignment was duly acknowledged and was said to meet all of the requirements of a bill of sale. The opinion further noted that at the time (1963) the State Highway Commission did not require any particular form of bill of sale.

The retail installment contract (defendants' Exhibit 1) found to be a bill of sale by the trial court falls far short of displaying the characteristics of a bill of sale exhibited by the manufacturer's statement of origin and the assignment thereof in the *Knisley* case.

The handwriting in the blanks of the contract form, reproduced in the record submitted to us herein, is for the most part illegible. However, there seems to be little dispute about the content thereof

and we have been able to supply it by a scrutiny of the answers to interrogatories, the stipulations, and the testimony of the Greens.

The instrument in *Knisley* clearly transferred and warranted title and ownership subject to the listed lien. While the unpaid balance shown on the retail installment contract here could be construed as showing an encumbrance, the instrument is obviously intended to serve not as a bill of sale but as a security document and was so used by DeVoe in assigning it to the Rose Hill State Bank. Title is not certified or warranted nor is the instrument notarized. As previously pointed out, the court observed in *Knisley* that the State Highway Commission did not require any particular form of bill of sale. Subsequent to the decision in *Knisley* in 1963, the Commission promulgated and published administrative rules and regulations (K. A. R. 36-20-10 and 36-20-12) pertaining to prerequisites to applications for title and title requirements for trailers, respectively. K. A. R. 36-20-10 reads in pertinent part as follows:

"Applications for certificate of title on a new vehicle *must* be accompanied by a notarized original bill of sale from the dealer. In cases where the vehicle is purchased from the factory or registered dealer in another state, the original invoice from the factory or notarized bill of sale from the foreign dealer shall be used." (Emphasis supplied.)

The effect of regulation 36-20-10 is to bring registration policy of the commission in line with decisions of this court and to carry out the legislative policy declared in 8-135, *supra*. Rules and regulations adopted by an administrative agency and filed with the Revisor of Statutes pursuant to K. S. A. 77-405, [now 77-425], shall have the force and effect of law. (*Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572; and *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P. 2d 255.)

The retail installment contract in the instant case qualifies neither as a notarized bill of sale nor as an original factory invoice. It could not serve as a basis for an application for a certificate of title.

In view of what has been said the question whether a finding of delivery is implicit in the trial court's judgment is immaterial.

Because of DeVoe's failure to deliver a bill of sale or manufacturer's original invoice to the Greens, the sale is fraudulent and void and the Greens have a cause of action based on fraud. (*Wilcox Trailer Sales, Inc. v. Miller,* supra; and *Gurley v. Broadway Sales Co.,* 184 Kan. 179, 334 P. 2d 312.)

Instead of a judgment for $250.45, representing the actual money

paid down, rendered by the trial court, apparently on a theory of breach of contract by DeVoe, Greens are entitled to a judgment for the total amount paid. According to stipulation No. 5 of the pre-trial order the total amount is $1,728.13; consisting of $435.00 for a trade-in of car and furniture, cash in the amount of $250.45 (total down payment of $685.45) and payments on the installment contract in the total amount of $1,042.68.

We turn next to Greens' contention that the trial court erred in charging the benefits of residing in the mobile home against them. We find no allegation in the pleadings nor any assertion in the pretrial proceedings made by DeVoe to the effect that residence benefits should be offset against damages awarded the Greens. We find no mention of offset in the portions of counsel's argument transcribed in the record. Furthermore, there was no evidence offered at the trial nor any suggestion made at pretrial conference as to what the value of the benefits to the Greens of residing in the mobile home might have been. The question simply was not presented to the court. The first mention made was the voluntary finding by the trial court at the conclusion of its findings. Under such circumstances the finding was erroneous and must be set aside.

Greens further complain the trial court erred in denying punitive damages. The trial court found no facts which would support an award of punitive damages. Though the trial court apparently treated the matter as an action for damages for breach of contract rather than damages for a void sale, we find no showing in the record which justifies a change in the ruling against punitive damages. (*Mann v. Tatge Chemical Co., Inc.*, 201 Kan. 326, 440 P. 2d 640; and *Atkinson v. Herington Cattle Co., Inc.*, 200 Kan. 298, 436 P. 2d 816.)

We turn next to defendants' cross-appeal. Two principal issues are raised. First, defendants claim there is no evidence to support a judgment against DeVoe Treadwell as an individual. We agree. Both Mr. and Mrs. Green testified they purchased the mobile home from DeVoe Sales, Inc., that transactions before and after the sale were had with various representatives of DeVoe. The contract was signed DeVoe Sales, Inc. by DeVoe Treadwell, "Pres." There is no evidence in the record that DeVoe Treadwell participated in the transaction in any manner other than in a representative capacity. DeVoe Sales, Inc. was identified as the dealer in the contract. Generally corporation officers are not individually liable upon con-

tracts wherein the corporate name is signed and is followed by the name of an officer of the corporation to which are added words denoting his representative capacity. (19 Am. Jur. 2d, Corporations, § 1345, p. 751.)

The judgment against DeVoe Treadwell as an individual must be set aside.

Next, DeVoe claims the trial court erred in not granting it a judgment for the deficiency of $748.87 which DeVoe claims remained after the repossession sale. This contention is based on the premise that the sale was valid as held by the trial court and judgment rendered against DeVoe only because the contract was breached by DeVoe's failure to procure insurance and thus it was entitled to a judgment for the deficiency. Since we have held the sale void, the premise falls and DeVoe's contention in this regard has no standing.

Lastly, DeVoe claims the trial court erred in finding Greens had made a cash down payment in the amount of $250.45 rather than $50.00. In support of this contention DeVoe latches onto an answer of Gary L. Green upon cross-examination. Green was asked if he made all payments to the Rose Hill State Bank. He answered "All except $50 and the down payments which was a—a trade in that I gave to Devoe in person when I picked up the mobile home." The testimony conflicts with stipulation No. 5 of the pretrial order wherein the parties expressly stipulated the Greens had paid the sum of $250.45 together with credit of $435 for a trade-in of car and furniture for a total down payment of $685.45. The purchase agreement (plaintiffs' Exhibit 1) and sales contract (defendants' Exhibit 1) reflect a payment of $250.45, as we are best able to ascertain. We further note the matter was not called to the trial court's attention when the decision was announced. We are unable to explain the discrepancy, but since there is evidence to support the trial court's finding it will not be disturbed.

The cause is remanded with directions to set aside the judgment against DeVoe Treadwell and to enter judgment in favor of the plaintiffs (Gary L. and Dawn C. Green) in the amount of $1,728.13 against defendant (DeVoe Sales, Inc.). It is so ordered.