No. 46,814

On the Complaint of Mrs. Earline J. Clairborne, *Appellant*, v. The Coffeyville Memorial Hospital, *Appellee*.

(510 P. 2d 1200)

Opinion filed June 9, 1973.

*David L. Ryan*, of Topeka, argued the cause, and *Vern Miller*, Attorney General, and *Dennis W. Moore*, Assistant Attorney General, were with him on the brief for the appellant.

*Roy Kirby*, of Hall, Kirby and Levy, of Coffeyville, argued the cause, and *Clement H. Hall* and *Joe L. Levy*, of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is an action which originated in a complaint filed by the appellant Mrs. Earline J. Clairborne before the Kansas Commission on Civil Rights. Mrs. Clairborne was employed as a registered nurse and night house supervisor by the Coffeyville Memorial Hospital, appellee. In her complaint she charged that she was demoted by reason of the fact that she was a black woman and complained of discrimination against her because of her race. The Kansas Commission of Civil Rights, after much delay, issued an order finding discrimination and ordering her reinstatement with restitution of back pay. The merits of Mrs. Clairborne's complaint were not determined by the district court nor are they involved on this appeal. After the order finding discrimination was entered by the commission, the Coffeyville Memorial Hospital appealed to the district court. There the hospital filed a motion to dissolve the commission's order and for summary judgment, contending that the commission's order was void on the ground that it was made in violation of the commission's own rules and regulations. We have before us the sole issue whether or not the

district court erred in sustaining the hospital's motion for summary judgment.

The difficulty arose in this case because of the fact that after a full evidentiary hearing was held by the commission, two of the hearing commissioners resigned before the case was determined. Specifically the record discloses that a public hearing was held on the complaint on December 19 and 20, 1969, at Coffeyville. The commissioners designated by the chairman to hear the matter were Joseph E. Press, Terry L. Grabham and Matt Hernandez. The parties were given a full opportunity to present their evidence. The matter was taken under advisement with briefs to be submitted by the parties. Thereafter Commissioner Press resigned from the commission on January 13, 1970. The remaining members of the commission became concerned as to the problem created by the vacancy and requested an opinion from the attorney general as to whether or not Commissioner Press could participate in a decision on the matter. Pending receipt of the attorney general's opinion, Commissioner Grabham resigned from the commission as of July 2, 1970. On September 12, 1970, the commission requested an opinion from the attorney general as to the propriety of substituting two new commissioners to determine the issues raised by Mrs. Clairborne's complaint. The attorney general advised the commission in substance that a decision by an administrative body is not invalid merely because, due to change of personnel because of resignations or transfers, members who were not present at the time the evidence was received participate in the decision, so long as the new members who render the decision consider and act upon the evidence which was received in their absence. It was the opinion of the attorney general that the commission could proceed to act in the Clairborne case by having two members who were not present at the hearing review the transcript, and thereafter convene with the third member for the purpose of discussing and rendering a decision in the case.

Following receipt of this opinion Chairman Norman E. Justice appointed himself and Joseph Cohen to read the transcript of the evidence and to deliberate with Commissioner Hernandez in arriving at a decision in the case. The minutes of the commission disclose that on December 5, 1970, a meeting was scheduled for Monday, December 28, for the hearing panel to deliberate and and determine the case. On March 27, 1971, an order was filed, signed by Norman E. Justice and Matt Hernandez, making findings

of fact and conclusions of law and ordering the hospital to re-instate Mrs. Clairborne and to pay her her back pay. The hospital filed a motion for rehearing which was denied. The hospital then appealed to the district court which sustained the hospital's motion for summary judgment. Mrs. Clairborne has appealed to this court.

The district court filed a memorandum decision which set forth the undisputed facts in the case, the contentions of the parties and certain regulations of the commission. The reason given by the trial court for sustaining the hospital's motion for summary judgment and dissolving the order of the commission was that the order was a clear violation of the commission's own published rules regarding hearings, commissioners and orders of the same and is therefore void. The basis of the district court's decision was that two of the three commissioners who determined the case were not the same persons who heard the evidence and therefore the order in favor of Mrs. Clairborne finding discrimination by the hospital was void as a matter of law.

On this appeal Mrs. Clairborne contends that the applicable statutes and regulations of the commission were fully complied with and that the order of the commission was valid. At the outset it should be pointed out that certain principles of law pertaining to administrative proceedings are not in dispute. The Kansas Act Against Discrimination, K. S. A. 1971 Supp. 44-1004, grants author-ity to the Civil Rights Commission to adopt rules and regulations to carry out the provisions of the act, and the policies and practices of the commission in connection therewith. Further authority is granted in Section 44-1005 to adopt rules of procedure. The parties agree that the rules and regulations adopted by an administrative agency to carry out legislative policy have the force and effect of law. Further, the commission is required to conform to its rules, and failure to comply renders an order unlawful. (*State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P. 2d 255; *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572; *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P. 2d 660; *Green v. Devoe Sales, Inc.,* 206 Kan. 238, 477 P. 2d 944.)

The parties do not dispute the general rule of law that in the absence of a statute to the contrary, due process or a fair hearing is not denied by the mere fact that an administrative officer makes or participates in the making of a decision without having been present when evidence was taken. (2 Am. Jur. 2d, Administrative Law,

§ 437, p. 245.) Stated in another way an administrative decision is not invalid merely because, due to a change in personnel because of illness, death, resignation, transfers, or similar reasons, an officer who was not present when the evidence was taken, made or participated in the decision, provided he has considered and acts upon the evidence received in his absence. In an annotation in 18 A. L. R. 2d 613 there are many cases cited which support this principle including *Opp Cotton Mills v. Administrator,* 312 U. S. 126, 85 L. Ed. 624, 61 S. Ct. 524; *Eastland Co. v. Federal Communication Commission,* 67 App. D. C. 316, 92 F. 2d 467; *Cooper v. State BD. of Medical Examiners,* 35 Cal. 2d 242, 217 P. 2d 630, 18 A. L. R. 2d 593. Although not clearly expressed the rule is inferentially recognized in *Union Public Ser. Co. v. Corporation Comm.,* 140 Kan. 722, 37 P. 2d 1010, where syllabus ¶ 2 reads as follows:

"There was a change in the personnel of the commission pending the hearing, but a majority of the commisison united in granting the certificate, and it is held to have been legally issued."

In our judgment the rule which permits the substitution of new administrative officers when vacancies occur during administrative proceedings is sound in view of the proliferation of administrative agencies in recent years. It is obvious that the personnel of administrative boards and commissions are constantly changing due to death, resignation or expiration of terms. It would seriously impair the work of an administrative commission to require it to start from the beginning in pending cases every time a vacancy occurred in its membership.

The appellee does not deny the validity of the substitution rule in the abstract but simply takes the position that it can not be applied to the Kansas Commission on Civil Rights in this case because of four regulations adopted by that body. They are stated in the record as follows:

"21-15-5. The term 'Hearing Commissioners' shall mean the Commissioners designated by the Chairman to conduct a hearing. . . .

"21-22-2 WHO SHALL CONDUCT:

"Hearings shall be conducted by three Commissioners designated by the Chairman, one of whom shall be designated as presiding member by the Chairman. . . .

"21-25-1 CONTENTS OF ORDER:

"An order of the Commission issued after a hearing shall set forth the findings of fact of the Hearing Commissioners, their decision, and, in their discretion, an opinion containing the reasons for said decision. . . .

"21-25-2 DECISIONS BY HEARING COMMISSIONERS:

"The decisions of the Hearing Commissioners shall be by majority vote. . . ."

It should be noted that these regulations do not specifically mention the subject of vacancies nor do they cover the subject of whether or not new hearing commissioners may be substituted in the course of a proceeding. The position of the hospital is simply that a "hearing commissioner" as defined in the regulations must be a member of the commission who actually was present at the hearing where the evidence was received; hence the regulations require that the commissioners who make the ultimate decision must be the same commissioners who heard the evidence. Such a construction of the term "hearing commissioner", of necessity, requires a narrow construction of the word "hearing" since it restricts the meaning of the word "hearing" solely to the reception of evidence. In our opinion this construction of the term "hearing" is unduly restrictive. It is true that the term "hearing" has both a narrow and a broad meaning. As applied to administrative proceedings the term "hearing" is usually construed as meaning the *whole proceeding* including the ultimate decision therein. (*Chicago Ry. Equipment Co. v. Blair,* (C. C.A.), 20 F. 2d 10, 11.) The decisions recognize the term "hearing" as relating not to physical presence at the taking of evidence, but to certain procedural minimums to ensure an informed judgment by one who has the responsibility of making the final decision and order. (2 Am. Jur. 2d, Administrative Law, § 437, p. 245; *Morgan v. United States,* 298 U. S. 468, 80 L. Ed. 1288, 56 S. Ct. 906; *Cooper v. State BD. of Medical Examiners,* supra; *Veasey v. Board of Public Instruction,* (Fla. App.) 247 So. 2d 80; and *Hinrichs v. Iowa State Highway Comm.,* 260 Iowa 1115, 152 N. W. 2d 248.)

When the four regulations relied upon by the hospital are considered in the light of the broad definition of the term "hearing", it is clear to us that the Kansas Commission on Civil Rights did not violate its regulations in substituting two new commissioners to review the transcript and consider and determine the case. It should be noted that since this case arose the question of substitution has been clarified and the rules of the Commission on Civil Rights were amended to cover the subject of vacancies as follows:

"Whenever the hearing commissioners cannot arrive at a majority decision for *any* reason, the chairman may appoint one or more new hearing commissioners who shall review the transcript of proceedings and participate in the proceedings with the same power and authority as if originally appointed as a

hearing commissioner." (K. A. R. 21-22-4 (*d*); amended January 1, 1972.) (Emphasis added.)

We hold that the trial court was in error in sustaining appellee's motion for summary judgment. The judgment is reversed and the case is remanded to the district court with instructions to overrule the motion for summary judgment and proceed to hear the case on its merits.