MANCHESTER INSURANCE AND INDEMNITY COMPANY, Plaintiff-Appellant,

v.

Norman L. RING, Defendant-Respondent,

United States Fidelity and Guaranty Company, Defendant-Appellant,

Van Chevrolet Company, Inc., Defendant-Appellant,

Royal Indemnity Company, Defendant-Respondent,

Ryder Truck Rental, Inc., Defendant-Respondent,

Gerald Britton and Carol Britton, Defendants-Respondents.

No. KCD 30201.

Missouri Court of Appeals, Western District.

Oct. 29, 1979.

C. Thomas Carr, Sheridan, Sanders & Simpson, P.C., Kansas City, for appellant Manchester Ins. & Indem.

Clyde G. Meise, Robert O. Jester, Meise, Cope & Coen, Kansas City, for appellants United States Fidelity & Guaranty Co. and Van Chevrolet Co., Inc.

Harold J. Maddox, Kansas City, for respondent Royal Indemnity Co.

Steven B. McMillin, Jr., Kansas City, for respondent Ryder Truck Co.

Robert L. Wehrman, Kansas City, for respondents Gerald Britton and Carol Britton.

Norman L. Ring, pro se.

Before WASSERSTROM, C. J., Presiding, WELBORN, Special Judge, and HOUSER, Senior Judge.

NORWIN D. HOUSER, Senior Judge.

This is a court-tried declaratory judgment action. The issue is whether either (or both) of two liability insurance carriers is obligated to defend lawsuits filed against Norman L. Ring, arising out of collisions between a 1970 Pontiac automobile Ring was driving in Jackson County on July 15, 1971, and two tractor-trailer units, and to pay any judgment or judgments obtained against him. Several pending actions filed by the insurers, owners and drivers of the tractor-trailer units are being held in abeyance, awaiting the outcome of this declaratory judgment action.

The trial court decided that both the policy of automobile liability insurance issued by Manchester Insurance & Indemnity Company (hereinafter "Manchester") to Norman L. Ring, and the policy issued by United States Fidelity & Guaranty Company (hereinafter "USF&G") to Van Chevrolet Co., Inc. (hereinafter "Van Chevrolet"), provide personal injury and property damage insurance coverage to Norman L. Ring, protecting him against these claims and lawsuits; that the USF&G policy provides primary coverage and the Manchester policy provides excess coverage. USF&G and Manchester have appealed.

On this review we determine whether there is substantial evidence to support the judgment and whether the judgment is against the overwhelming weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

On July 15, 1971 Ring was sole owner and operator of N & R Motors, 3610 East 31st Street, Kansas City, Missouri, an auto business, in the course of which he bought, repaired and wholesaled automobiles, one at a time, operating under an occupational license issued by the city, using dealer's tags, obtained from the State of Missouri, and a license issued by the state authorizing the operation of N & R Motors as a used car business. Ring had no cars on his lot, and did no retail business. He wholesaled cars from one dealer to another. He was what is known in the trade as a "used car jockey."

Van Chevrolet held for sale a 1970 Pontiac, originally titled in Tennessee. Van Chevrolet applied for a Kansas certificate of title, as required by law, which Kansas authorities issued and mailed to Van Chevrolet. The Kansas certificate of title was received by Van Chevrolet on July 14. Four days before that date, and on July 10, Norman Ring, desiring to purchase the Pontiac for resale as an operation of the automobile sales agency of N & R Motors, negotiated with salesmen at Van Chevrolet, and a price of $2,300 was agreed upon. On the same day, July 10, Van Chevrolet delivered the Pontiac to Ring, with no limitation upon Ring's use of the car. The order form and invoice show a sale made to N & R Motors. (Inconsistently, Ring testified that Van Chevrolet was to transfer the title to National Sales). In payment Ring gave Van Chevrolet a sight draft for $2,300, drawn upon Bannister Bank, signed by "National Sales, by Norman Ring." Ring had an agreement with Frank McDonald, owner of National Sales, whereby Ring could use McDonald's credit if Ring had occasion to buy an expensive, late model automobile costing more than Ring had to spend, in which case Ring would pay McDonald "a per cent" of what Ring made on the sale of the car.

Van Chevrolet not yet having received the newly issued Kansas certificate of title on July 10, no certificate of title passed between buyer and seller, with an assignment thereof, on the day the car was delivered to the buyer. Nor did the parties on that day, July 10, agree that the assigned certificate of title should pass between them later, but within five days. Nor did Van Chevrolet mail the assigned certificate of title to Ring by registered or restricted mail within five days after July 10. Ring did not get a receipt for $2,300. No bill of sale was given him. There was no written agreement between the parties. Nothing was signed except the sight draft. Upon receipt by mail of the Kansas certificate of title on July 14 Van Chevrolet assigned the title "to Mr. Ring or one of his automobile companies" but did not mail it to Ring. Instead, Van Chevrolet hand-delivered the assigned certificate of title to Southgate State Bank, depository for Van Chevrolet, "for the draft to clear through normal banking channels." The accident occurred the next day, July 15. After the accident Ring stopped payment on the draft. Thereafter Ring issued a new draft, which cleared July 30. Approximately two weeks after the accident Ring received a certificate of title to the Pontiac, issued in the name of N & R Motors.

The accident happened about midnight or 1:00 o'clock in the morning. At the time of the accident the automobile bore Missouri dealer's license plate No. D3–124A, 1971,

registered in the name of N & R Motors, 3610 East 31st Street, Kansas City, Missouri. Immediately prior to the accident Ring had been at the Crackerneck Country Club, at the junction of 40 Highway and 71 Bypass, for perhaps three hours, drinking beer. Ring did not remember where he had been before going to the country club; how many beers he had or whether he had supper that night. He was not "with someone" —did not "associate with anyone while (he was) there, in particular." When he left the country club Ring drove north to Interstate 70, turned onto I–70 and drove east to the point of accident. He was rendered unconscious; woke up in a hospital, had no recollection of a collision. After three hours in the hospital he underwent a breathometer or alcohol-meter test, the reading of which showed "over what it was supposed to be." Ring admitted that he was "slightly" under the influence of liquor when he left the country club. At the time of the collisions Ring was going home. He lived in Odessa, Missouri. Asked where he had been with the Pontiac and what he was doing with it and using it for during the 24 hours prior to the time of the collisions, Ring answered, "I had driven said car to Kansas City in general line of business."

At the time of the accident the following policies of insurance were in force and effect:

(1) A policy issued by USF&G to Van Chevrolet extending coverage under an omnibus clause to any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, if the operation is within the scope of such permission. The policy contained exclusions denying coverage to (a) "any person * * * with respect to any automobile * * * possession of which has been transferred to another by the Named Insured pursuant to an agreement of sale," and (b) persons "employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured."

(2) A policy issued by Manchester to Norman L. Ring on his personal car, a Chevrolet Corvair Monza automobile, providing coverage for the use of "other automobiles", with an exclusion making the coverage inapplicable "to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place."

The negotiations between Van Chevrolet Company salesmen and Ring having taken place on the business premises of Van Chevrolet in Mission, Kansas, the case is to be decided on the basis of the applicable statutes and case law of the State of Kansas, under the principle of *lex locali contractus.* *Gibson v. Connecticut Fire Ins. Co.,* 77 F. 561 (8th Cir. 1896); *Western Fire Ins. Co. v. Hawkeye-Security Ins. Co.,* 213 F.Supp. 744 (W.D.Mo.1962).

Kansas Statutes Annotated, 1970 Supp. 8–135(c)(6), as amended by H.B. 1515, effective July 1, 1971, provided in relevant part as follows:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed five (5) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within five (5) days thereof: Provided, That such certificate of title is in the possession of the seller at the time of delivery of said vehicle and the agreement of the parties shall be executed on a form and in the manner prescribed by the department. The requirements of this paragraph concerning delivery of an assigned title shall be satisfied if the seller shall mail to the purchaser by registered or

restricted mail the assigned certificate of title within said five (5) days."

*With respect to the appeal of USF&G :*

This appellant's first contention is that there was a sale to Norman L. Ring, or a transfer of possession to him "pursuant to an agreement of sale," so as to exclude him from coverage under (1)(a), the first exclusionary provision above set forth. We have concluded that there was no such sale; that the agreement of sale was void; that the seller retained title to the Pontiac; and that the exclusionary provision has no application because of the invalidity of the agreement of sale. We reach these conclusions on the basis of the following analysis:

The statute required that an assigned certificate of title pass between buyer and seller at time of delivery of the vehicle, or at an agreed time not more than five days after delivery, or by registered or restricted mail within said five days; otherwise the sale of the vehicle was declared fraudulent and void. No assignment of a certificate of title passed between the parties at time of delivery. There was no agreement that the assigned certificate be provided within five days. The assigned certificate was not mailed to the buyer within said five days. On the fourth day after the sale Van Chevrolet first received the newly issued certificate of title. On the same day Van Chevrolet assigned the certificate of title and hand delivered it to the seller's depository bank, attached to the sight draft, for clearance through bank channels. USF&G contends that Van Chevrolet thereby complied with the intent of the statute; that possession of the vehicle was transferred to Ring pursuant to a negotiated agreement of sale, for a price to be paid by tender of a draft requiring that the assigned certificate of title be attached to the draft in order for it to be honored; that nothing remained to be "finalized" except satisfaction of the draft and acceptance of the assigned certificate of title; that the transaction was indicative of a sale and therefore the policy exclusion, based upon an agreement of sale, was fully operable.

Although the seller did all it could under the circumstances to effect the sale, the method agreed upon by the parties (attaching the assigned certificate of title to a sight draft, and forwarding same to a bank for collection) did not conform to procedure prescribed by the statute. Kansas courts have " * * * repeatedly stated that the provisions of 8–135(c)(6) mean exactly what they say, and that they are to be literally interpreted, and strictly enforced, and that failure to comply with its provisions renders the sale of a vehicle required to be registered under the Act fraudulent and void." *Wilcox Trailer Sales, Inc. v. Miller,* 200 Kan. 315, 436 P.2d 860, 865 (1968) (citations omitted); *Green v. DeVoe Sales, Inc.,* 206 Kan. 238, 477 P.2d 944, 949 (1970) (citing *Wilcox*). The requirement that a certificate of title pass between the parties at the time of delivery of the vehicle is mandatory under Kansas law. *Gurley v. Broadway Sales Co.,* 184 Kan. 179, 334 P.2d 312 (1959). In a police regulation of this type " * * * absolute technical compliance is necessary. Such provisions are rigidly enforced and there are no exceptions to conform to intentions." *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* 311 S.W.2d 41, 46 (Mo. App.1958). Failure to comply with the statute renders the sale of an automobile fraudulent and void. *Maryland Cas. Co. v. American Family Ins. Group,* 199 Kan. 373, 429 P.2d 931 (1967). The agreement of sale entered into between Van Chevrolet and Ring was voided by the statute as a matter of law. Because of the parties' failure to comply with the statute, title did not pass to the buyer; Ring did not become owner of the vehicle; Van Chevrolet remained the owner; and the sale had not been consummated at the time of the collisions on July 15. This was conceded by counsel for USF&G in the colloquy between the court and counsel in open court prior to the trial of this case, by way of a judicial admission that under the law of Kansas in force at that time the sale must be consummated within the five day period, regardless of the acts or intentions of the parties, and that the law of Kansas does not support the conclusion that the sale was consummated

on July 10 or within the five day period. This concession found its way into the stipulation of facts, which in paragraph 5 recites:

"At said time (July 10, 1971) defendant Van Chevrolet, Inc. did not have in its possession the certificate of title to said automobile, and did not mail or deliver to defendant Norman L. Ring, or any agent of his, an assigned certificate of title within five days, as required by the laws of Kansas, nor did it mail or deliver an assigned certificate of title to him or any agent of his by the time or date of the aforesaid accident, and *the title and ownership of said automobile remained in defendant Van Chevrolet Co., Inc. at the time and date of said accident.*" (Parenthesis and emphasis supplied).

The exclusionary provision in question, based upon the existence of an agreement of sale, contemplates and requires that there be a *valid and subsisting* agreement of sale, and has no application where possession of a vehicle has been transferred to another pursuant to a void agreement of sale. *See also Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 26 (Mo.1969), in which the court said, "As a general rule, a valid and enforceable contract may not arise out of a transaction prohibited by statutory law." And see 17 C.J.S. *Contracts* § 201 (1963); 17 Am.Jur.2d *Contracts* § 165 (1964).

USF&G is not entitled to be exonerated on the basis of its first defense.

Next, was Norman L. Ring employed in or otherwise engaged in duties in connection with an automobile business other than that of Van Chevrolet, under (1)(b), the second exclusionary provision above quoted, so as to deprive him of the benefit of the omnibus provision of the USF&G policy? We have concluded that he was, under the undisputed evidence, on this basis:

The exclusionary provision of the Comprehensive General Automobile Liability endorsement read as follows:

"None of the following is an insured: (v) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured."

This provision eliminates as insureds all persons of a class, namely, persons employed in an automobile business and persons engaged in duties in connection with an automobile business (other than that of Van Chevrolet).

The term "employed in" is not used in the sense of an employee standing in an employer-employee relationship, but is used in the occupational sense—viz., the occupation in which one is employed. We see no escape from the conclusion, under the only evidence on the issue, that at the time of the accident on July 15 Ring was a member of the class of persons employed in an automobile business.

Furthermore, at the time of the accident Ring was a person engaged in duties in connection with an automobile business, namely, the business of N & R Motors. Ring had driven the Pontiac from his home in Odessa to Kansas City that day in the general line of his business, which was located in Kansas City. Five days previously he had purchased the Pontiac for the purpose of resale. The only reasonable inference from the evidence is that in driving the Pontiac from his home in Odessa to Kansas City, bearing N & R Motors license plate, Ring was on a trip to promote the business of the sales agency. There is no other evidence on the issue. He was taking the car to the market where a buyer might be found. Not having been successful in selling the Pontiac on July 15, Ring's return trip to his home, on Interstate 70, the customary and most direct route, was an integral part of the business trip to Kansas City. Analogous are the rules involving the liability of an owner for acts of his servant or agent in the operation of his motor vehicle. Where at the time of an accident the servant or agent deviates or departs from the usual or most direct route which he would ordinarily follow in using the car on the owner's business, and goes off on some errand or for some purpose wholly his own, the owner is not liable for injuries inflicted

by the servant or agent. But if at time of accident the servant or agent has resumed the owner's business and has returned to the point of departure or to a point where in the performance of his duties he is required to be, and actually returns to his master's business, the owner may be liable. 60 A C.J.S. *Motor Vehicles* § 437(4) (1969); 6 Blashfield, Automobile Law and Practice § 253.81 (3rd ed. 1966); *Ruff v. Farley Machine Works Co.*, 151 Kan. 349, 99 P.2d 789, 793–94 (1940); *Beem v. H. D. Lee Mercantile Co.*, 337 Mo. 114, 85 S.W.2d 441 (1935); *Cable v. Johnson*, 63 S.W.2d 433 (Mo.App.1933). Ring's visit to the country club on the way home constituted a deviation from the regular route home, but the accident did not occur on the deviate route. The accident occurred on Interstate 70, after Ring had returned to the point of departure and resumed his trip home on the regular and most direct route from his business in Kansas City to his home in Odessa. When Ring returned to and was traversing that segment of the route home Ring was engaged in duties and activity in connection with his automobile business, within the meaning of the policy provision, under accepted principles.

There is no evidence, substantial or insubstantial, in support of the ruling that the collisions did not occur while Ring was employed in or otherwise engaged in duties in connection with an automobile business. The ruling is against the overwhelming weight of the evidence.

*With respect to the appeal of Manchester:*

■ Manchester contends that its policy provision extending coverage to Ring in the use of "other automobiles" is subject to the specific exclusion contained in paragraph V(d)(2), which reads:

> "This insuring agreement does not apply to any accident arising out of the operation of an automobile sales agency * * ."

Under the facts above recited in connection with the second exclusionary provision of the USF&G policy, it follows that the accident arose out of the operation of N & R Motor Sales, an automobile sales agency.

The trial court's ruling that the collisions did not arise out of the operation of an automobile sales agency within its meaning of the quoted exclusion is not supported by substantial evidence and is against the overwhelming weight of the evidence.

The judgment is reversed. Cause remanded with directions to enter a new judgment declaring the rights of the parties in form and manner consistent with the rulings of this opinion.

All concur.