No. 80,539

FRED WASSON, *Claimant*, v. UNITED DOMINION INDUSTRIES, *et al.*, *Appellees,* and KANSAS WORKERS COMPENSATION FUND, *Appellant.*

(974 P.2d 578)

Opinion filed March 5, 1999.

*David J. Bideau,* of Bideau Law Offices, of Chanute, argued the cause and was on the briefs for appellant.

*M. Doug Bell,* of Hall, Levy, DeVore, Bell, Ott, and Kritz, of Coffeyville, argued the cause, and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Workers Compensation Fund (Fund) appeals the Workers Compensation Board's finding that the Fund lacked standing to litigate its statutory duty to reimburse the employer's negligent overpayment of benefits to a worker under K.S.A. 1992 Supp. 44-534a(b).

On March 9, 1993, Fred Wasson reported to his employer, Litwin Engineering & Construction, Inc., that he had sustained a work-related back injury. Wasson's employer referred Wasson to Paul Sandhu, M.D., for treatment. On March 16, 1993, Dr. Sandhu diagnosed a lumbosacral sprain and released Wasson to return to regular work duties. Litwin Engineering reported the injury to the Division of Workers Compensation on March 17, 1993, and noted that Wasson had returned to regular duty. Even though Wasson had returned to work, the claim for worker's compensation proceeded.

In a recorded telephone statement on April 2, 1993, an adjuster for Litwin Engineering's insurance carrier, U.S.F. & G., took Wasson's statement regarding his injury. The adjuster asked Wasson if he had previously filed any workers compensation claims. Wasson replied that he had filed a claim in the early 1970's for an injury to his left hand, and he had previously undergone a hernia operation. When asked specifically if he had any prior back injuries, Wasson stated, "No, just pulled muscles." When asked whether he was receiving treatment from a doctor at the time, Wasson replied that he was being treated by a physician who had prescribed electric treatment, back massage, and dry heat. Wasson stated that the doctor had recommended further treatment.

Shortly thereafter, Wasson, who continued to receive workers compensation for the back injury, moved to Oklahoma. A medical management nurse for U.S.F. & G. assumed management of Wasson's medical care. The medical manager stated in her initial medical evaluation on September 30, 1993:

"Mr. Wasson first injured his back on the job on 3/9/93. He was pulling on a pipe, and felt his back pop. He felt pain in his back the rest of the day, but continued to work. He reported the injury to his supervisor and was apparently fired. He returned to his home in Tulsa and was put on workers comp. He was treated by Dr. Swynden in Catoosa with medications and physical therapy. He noted some improvement. He took a job in Mississippi in early April. He returned home in early August when he could not tolerate the discomfort any longer. He resumed treatment with Dr. Swynden."

On November 9, 1993, the medical manager recommended that Wasson receive a foot evaluation because left heel pain had slowed Wasson's progress in physical therapy. Wasson was diagnosed with plantar fascitis. The evaluating doctor opined that the condition developed as a result of Wasson's altered gate resulting from his back injury. The physician performed a surgical procedure to alleviate the heel pain.

On October 5, 1994, after acquiring records from Oklahoma that indicated Wasson had a history of several prior workers compensation claims and settlements for back injuries, U.S.F. & G. requested that Wasson submit to an independent medical examination by Michael Munhall, M.D.

Dr. Munhall evaluated Wasson's neuromuscular condition. Inconsistencies in the findings caused the doctor to question Wasson's veracity. However, for comparison purposes, Dr. Munhall assumed that the result of the neuromuscular examination was a reliable indicator of Wasson's physical condition. Dr. Munhall then compared Wasson's examination results with data from Wasson's pre-March 9, 1993, neurological examinations and impairment ratings and concluded that after the March 9, 1993, injury, there was no significant change in Wasson's pre-existing disability. Consequently, Dr. Munhall gave Wasson a 0% disability rating for his March 9, 1993, work injury.

As a result of Dr. Munhall's opinion, U.S.F. & G. stopped paying workers compensation benefits to Wasson. Wasson abandoned his claim.

U.S.F. & G. paid benefits to and on behalf of Wasson totaling $43,925.37, which included temporary total disability compensation, medical expenses, and medical management expenses. On March 9, 1995, U.S.F. & G. impled the Fund, notifying the Commissioner of Insurance it was seeking reimbursement from the Fund for all benefits mistakenly paid to and on behalf of Wasson. The matter was set for hearing pursuant to K.S.A. 1992 Supp. 44-534a.

Wasson failed to appear for the hearing, so an informal hearing was held. No stipulations were entered into by the parties. U.S.F. & G. submitted to the administrative law judge (ALJ) evidence of Wasson's pre-existing back disability and Dr. Munhall's opinion that Wasson suffered no discernible aggravation of his pre-existing disability as a result of the March 9, 1993, injury. U.S.F. & G. asserted to the ALJ that Wasson's claim for compensation must be denied because Wasson failed to submit evidence that he had sustained a compensable injury. U.S.F. & G. contended that under the facts the ALJ was required to order the Fund to reimburse it $43,925.37 mistakenly paid to Wasson, pursuant to K.S.A. 1992 Supp. 44-534a(b) which states that compensation paid by an employer on a claim that is subsequently reduced or totally disallowed shall be reimbursed to the employer by the Fund.

The Fund argued that it should be relieved of all responsibility to reimburse the employer's insurer for payments it made on Wasson's claim because K.S.A. 1992 Supp. 44-534a(b) is inapplicable to the case. It contended that it was clear that Wasson had not sustained a work-related back injury on March 9, 1993, for which the Fund had liability. It claimed that Wasson's medical treatment and disability payments after Dr. Sandhu released Wasson to work with no restrictions on March 16, 1993, were benefits negligently paid rather than mistakenly paid by U.S.F. & G., and under the circumstances it was not responsible for the negligence of U.S.F. & G. in administering Wasson's claim. The Fund further contended that it was not liable for disability and medical compensa-

tion paid to Wasson after Wasson went to work for another employer and suffered foot injuries unrelated to his March 9, 1993, claim. The Fund also raised jurisdictional issues, including a lack of proof that Wasson's employer was subject to the Workers Compensation Act and the timeliness of U.S.F. & G.'s application for hearing.

The ALJ's June 18, 1997, order states that the sole issue was the statutory liability of the Fund. The ALJ noted that a claimant (worker) has the burden of proof that he or she is entitled to compensation, and the claimant in this case had failed to meet his burden because he presented no evidence. The ALJ determined from the evidence submitted by U.S.F. & G. that Wasson had not sustained a compensable injury on March 9, 1993. The ALJ totally disallowed the compensation paid and concluded that, pursuant to K.S.A. 1992 Supp. 44-534a(b), the Fund was liable to the employer and its insurance carrier in the sum of $43,925.37.

The Fund appealed to the Board. In a 3 to 2 decision, a majority of the Board noted that the right of the employer and its insurance carrier to seek reimbursement from the Fund is governed by K.S.A. 1992 Supp. 44-534a(b), which provides:

"If compensation in the form of medical benefits, temporary total disability benefits or vocational rehabilitation benefits has been paid by the employer or the employer's insurance carrier either voluntarily or pursuant to a preliminary award entered under this section and, upon a full hearing on the claim, the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a and amendments thereto, for all amounts of compensation so paid which are in excess of the amount of compensation the employee is entitled to as determined in the full hearing on the claim. The director shall determine the amount of compensation paid by the employer or insurance carrier which is to be reimbursed under this subsection, and the director shall certify to the commissioner of insurance the amount so determined. Upon receipt of such certification, the commissioner of insurance shall cause payment to be made to the employer or the employer's insurance carrier in accordance therewith."

The majority observed that the statute requires the Director to determine the amount to be reimbursed and then send certifica-

tion of the amount determined to the Commissioner of Insurance. It noted that in this instance, the ALJ acted for the Director and determined the amount of reimbursement. Therefore, the Director should have transmitted the certification for reimbursement to the Insurance Commissioner.

After reviewing the statutes, the majority stated that the question before it was whether the Fund had standing either to litigate the issue of its liability under K.S.A. 1992 Supp. 44-534a(b) or to appeal the ALJ's determination of liability. It pointed out that unlike K.S.A. 44-567(d), which specifically provides that the Fund is to participate in all proceedings to determine the compensation to be awarded a handicapped employee, K.S.A. 1992 Supp. 44-534a(b) is silent regarding the Fund's right to litigate its liability for overpayment. Also, unlike K.S.A. 44-532a which imposes liability upon the Fund where an insolvent employer has no insurance, K.S.A. 1992 Supp. 44-534a(b) does not have a related Kansas Administrative Regulation which provides that the Fund is entitled to a hearing on the question of its liability for overpayment. See K.A.R. 51-15-2 (providing in part: "The workers' compensation fund shall be entitled to a hearing on the question of its liability imposed by the provisions of K.S.A. 44-532a.")

The Board considered the Fund's standing to contest its liability for U.S.F. & G.'s overpayment of benefits to Wasson. The majority of the Board observed that neither the Workers Compensation Act nor the Kansas Administrative Regulations give the Fund the right to contest its liability under K.S.A. 1992 Supp. 44-534a(b). The Board concluded that the Fund lacked standing to contest its liability for overpayment and dismissed the Fund's appeal.

The two dissenting Board members would have held that the Fund had standing to litigate its liability under K.S.A. 1992 Supp. 44-534a(b) and that the ALJ erred in deciding the issue of overpayment based on whether the claimant had satisfied his burden of proof. The dissenters would have found that where the claimant abandons interest in the litigation and the only remaining issue is the liability of the Fund, the employer and its insurance carrier, not the worker, bear the burden of proof.

The Fund appealed the Board order. The case was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

## FUND'S RIGHT TO LITIGATE

Whether the Fund has standing to contest liability for an employer's overpayment of workers compensation benefits under K.S.A. 1992 Supp. 44-534a(b) is a question of statutory interpretation over which we have unlimited review. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). We recognize that an agency ruling within its area of expertise is entitled to some deference. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 246, 834 P.2d 368 (1992). However, if we find that the administrative body's interpretation of a question of law is erroneous as a matter of law, this court should take corrective steps. *Hixon v. Lario Enterprises, Inc.*, 257 Kan. 377, 379, 892 P.2d 507 (1995).

The Fund asserts that it is a necessary party because of its statutory liability under K.S.A. 1992 Supp. 44-534a(b) to reimburse the employer's overpayment of benefits. The Fund contends that, as a necessary party, it has standing to contest jurisdiction and litigate the merits of disputed reimbursement claims. In this case, the Fund is not challenging the compensability of individual medical expenses; the Fund is alleging that U.S.F. & G. mismanaged Wasson's claim to the extent that it neglected to note that the claimant had been released for work without restrictions, and the failure of the insurance company to properly monitor the claim resulted in more than $40,000 in expenses for which the Fund should not be liable. The essence of the Fund's argument is that requiring vigilant case monitoring of the status of the worker's right to compensation by an employer or an employer's insurer would not frustrate the policies or objectives of the Workers Compensation Act.

The right to appeal is entirely statutory and not contained in the United States or Kansas Constitutions. Appellate courts and administrative tribunals have jurisdiction to entertain an appeal only

if an appeal is prescribed by statute. *McDonald v. Hannigan*, 262 Kan. 156, 160, 936 P.2d 262 (1997).

Standing is a question of whether the party has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996).

The Fund was created and exists pursuant to K.S.A. 44-566a, and it receives its funding from essentially three sources: (1) appropriations from the state general fund, K.S.A. 44-566a(b); (2) assessments against insurance carriers and self-insurers, K.S.A. 44-566a(b); and (3) payments by employers where an employee is killed in an otherwise compensable accident, but in which there are no eligible dependents, K.S.A. 44-570 (non-dependent death).

One of the purposes of the Fund, sometimes referred to as the "Second Injury Fund," is to encourage the employment of persons handicapped as a result of specific impairments by relieving employers, wholly or partially, of workers' compensation liability resulting from compensable accidents suffered by these employees. K.S.A. 44-567(a).

If the handicapped employee's impairment contributes causally to the injury or disability, the Fund may be liable for a portion of the compensation and benefits awarded to the claimant. The apportionment of the award is based on the amount of disability attributable solely to the second injury and the extent that the pre-existing impairment contributed to the second injury. *Brozek v. Lincoln County Highway Department*, 10 Kan. App. 2d 319, 325, 698 P.2d 392 (1985). The award of contribution must be equitable and reasonable and based upon all the evidence.

The Fund is also required to pay benefits to injured workers where the employer has no insurance and is financially unable to pay compensation to the injured worker or where the employer cannot be located to pay compensation. K.S.A. 44-532a.

Responsibility for payments made under K.S.A. 44-567(a) and K.S.A. 44-532a and administration of the Fund lies with the Com-

missioner of Insurance. K.S.A. 44-566a(a). The Fund must be impleaded as a party in all cases where it may be held liable for payment of any amounts in *proceedings* under the Workers Compensation Act. K.S.A. 44-566a(c)(1). Where the Fund has been properly impleaded, it shall be liable for reimbursement of an employer or insurance carrier pursuant to the provisions of K.S.A. 1992 Supp. 44-534a. K.S.A. 44-566a(e)(3). Clearly, the issue of statutory Fund liability under K.S.A. 44-567(a) (second injury) and K.S.A 44-532a (insolvent employer) is a justiciable question, and under those circumstances, the Fund would have a significant interest in the outcome and must be impleaded as a party.

On the other hand, K.S.A. 1992 Supp. 44-534a(b) states the procedure for an employer to seek reimbursement from the Fund when compensation paid a worker exceeds the amount of compensation awarded or if compensation is totally disallowed. The statute provides:

"If compensation in the form of medical benefits, temporary total disability benefits or vocational rehabilitation benefits has been paid by the employer or the employer's insurance carrier either voluntarily or pursuant to a preliminary award entered under this section and, upon a full hearing on the claim, the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a and amendments thereto, for all amounts of compensation so paid which are in excess of the amount of compensation the employee is entitled to as determined in the full hearing on the claim. The director shall determine the amount of compensation by the employer or insurance carrier which is to be reimbursed under this subsection, and the director shall certify to the commissioner of insurance the amount so determined. Upon receipt of such certification, the commissioner of insurance shall cause payment to be made to the employer or the employer's insurance carrier in accordance therewith."

When a statute is clear and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *In re Marriage of Killman*, 264 Kan. 33, 43, 955 P.2d 1228 (1998).

The evidence clearly supports the ALJ's finding that Wasson did not receive an injury while working for his employer on March 9,

1993. The employer and the employer's insurance carrier sought reimbursement from the Fund pursuant to K.S.A. 1992 Supp. 44-534a(b). The procedure by which the employer and its insurance carrier is to be reimbursed for any excess payment of workers compensation or where compensation is totally disallowed is set out in K.S.A. 1992 Supp. 44-534a(b). That statute provides that the reimbursement be from the Fund, not the claimant. The statute merely requires that the amounts overpaid to a claimant shall be determined by the Director and certified to the Commissioner of Insurance for payment to the employer or its insurer.

The language of K.S.A. 1992 Supp. 44-534a(b) is quite clear. Under the statute, reimbursement by the Fund is merely a ministerial act and the Fund has no right to litigate its liability for the overpayment. The employer's insurance carrier is entitled to reimbursement by the Fund.

Affirmed.