No. 91,654

SCHMIDTLIEN ELECTRIC, INC., and TRINITY UNIVERSAL INSURANCE CO., *Plaintiffs/Appellants,* v. PAULA GREATHOUSE, Director, Kansas Division of Workers Compensation, *Defendant/Appellee.* NORTHMINSTER PRESBYTERIAN CHURCH and BROTHERHOOD MUTUAL INSURANCE CO., *Plaintiffs/Appellants,* v. PAULA GREATHOUSE, Director, Kansas Division of Workers Compensation, *Defendant/Appellee.*

(104 P.3d 378)

Opinion filed January 21, 2005.

*Matthew S. Crowley*, of Gehrt & Roberts, Chartered, of Topeka, argued the cause, and was on the briefs for appellants.

*Glenn H. Griffeth*, deputy chief counsel, of Kansas Department of Human Resources, of Topeka, argued the cause, and *A.J. Kotich*, chief counsel, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: This appeal concerns two workers compensation cases which have been consolidated. Employer Schmidtlien Electric, Inc., together with its insurance carrier Trinity Universal Insurance Company (Trinity Universal), and employer Northminster Presbyterian Church, together with its insurance carrier Brotherhood Mutual Insurance Company (Brotherhood Mutual), appeal from the trial court's dismissal of their petitions for writs of mandamus. In both petitions, plaintiffs sued the Director of the Kansas Division of Workers Compensation (Director) under K.S.A. 44-534a seeking reimbursement of benefits they had paid to their injured employees (claimants). This court transferred the case from the Court of Appeals for review and determination, pursuant to K.S.A. 20-3018(c).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did the trial court err in holding there was not a full hearing on employee Bryan Kent's claim? Yes.

2. Did the trial court err in holding there was no administrative determination that plaintiffs paid more in benefits than those to which claimants were entitled? Yes.

3. Did the trial court err in refusing to issue the writs of mandamus? Yes.

Accordingly, we reverse, remand, and order the trial court to issue writs of mandamus ordering the Director to carry out her statutory duties, *i.e.*, to determine the amount of compensation paid by the insurance carriers to claimants and to certify to the Commissioner of Insurance the amount so determined for their reimbursement.

## FACTS

Kristen Anderson was employed by Northminster Presbyterian Church, which was in turn insured by Brotherhood Mutual. Bryan Kent was employed by Schmidtlien Electric, Inc., which was in turn insured by Trinity Universal. Both Anderson and Kent became injured, and their employers' insurance carriers paid them temporary disability benefits and medical expenses. Their respective workers compensations claims are set forth separately below.

### Claimant Anderson

According to an Agreed Award dated February 10, 2003, the parties stipulated to the following facts:

"1. [Anderson] claims personal injury by accident in Reno County, Kansas.

"2. [Anderson] claims said accidental injury occurred on or about July 19, 1998.

"3. Respondent/insurance carrier admit [that Anderson] met with personal injury by accident on or about the alleged date of accident.

"4. Respondent/insurance carrier admit the relationship of employer-employee existed on the date of the accidental injury.

"5. Respondent/insurance [carrier] admit that the parties are governed by the Kansas Workers Compensation Act.

"6. Respondent/insurance carrier admit that proper notice of the alleged accident was made.

"7. Brotherhood Mutual Insurance Company was the insurance carrier for the respondent on the date of accidental injury.

"8. The parties stipulate that the average weekly wage on July 19, 1998, was $403.85.

"9. Medical treatment has been furnished in the total amount of $24,388.16. There is no claim by Anderson for any past due or out-of-pocket medical reimbursement. "10. Temporary disability compensation has been made in the amount of $3,794.23. . . ."

According to the Agreed Award, the parties acknowledged that the following four issues remained in dispute:

"(1) Whether [Anderson's] accidental injury arose out of and in the course of her employment with [the church]?
"(2) Whether timely written claim was served?
"(3) What is the nature and extent of [Anderson's] disability and the appropriate compensation, if any?
"(4) Whether timely Application for Hearing was filed with the Director pursuant to K.S.A. 44-534(b)?" (Emphasis added.)

Under "FINDINGS," the administrative law judge (ALJ) found regarding issues two and four that the parties acknowledged timely written claim was not served and that an application for hearing was not timely filed. He also found: "The parties have requested that the Court enter a final determination denying compensability based upon finding all disputed issues against claimant and in favor of respondent/insurance carrier." (Emphasis added.)

Accordingly, under the heading "AWARD," the ALJ stated in relevant part as follows:

"The Court accepts the findings of the parties and adopts them for purposes of the Court's final determination in this matter. Accordingly, claimant's claim is denied.

"This Agreed Award should be treated as any other award as if this matter was fully litigated. All other rights of the parties in this matter have been adjudicated except that the respondent/insurance carrier's right to proceed on securing the reimbursement from the Kansas Workers' Compensation Fund." (Emphasis added.)

The Agreed Award was signed by the ALJ, by attorneys for both sides, and by claimant Anderson. It was eventually filed with the Director, Philip Harness.

Brotherhood Mutual then sought reimbursement of its $28,182.39 from the Director. In a letter dated March 10, 2003, Harness essentially held that reimbursement would be denied because Anderson had originally been entitled to the benefits, and

her later failure to file timely claims and applications did not eliminate her right to benefits earlier received.

"The February 10, 2003 Agreed Award correctly states that the claimant is entitled to no award of benefits due to late written claim or late application for hearing. However, the claimant's entitlement to benefits do [*sic*] not depend on the existence of an award.

"In this case, the defenses of late written claim or late application for hearing would not have existed until 200 days [K.S.A. 44-520a] or 2 years after the last payment of benefits [K.S.A. 44-534(b)]. The claimant was entitled to the benefits when paid, and the claimant's failure to timely pursue the case after receiving the benefits in no way dissolves the claimant's right to benefits already received.

"It does not appear that the employer or its insurance carrier paid any amounts that the claimant was not entitled to. Therefore, I cannot certify any amounts for reimbursement from the fund."

Brotherhood Mutual then sought reconsideration of Harness' denial, to which he replied in a letter dated March 25, 2003. Among other things, he essentially repeated the theme that reimbursement would be denied because Anderson had originally been entitled to the benefits and her later failure to file timely claims and applications did not eliminate her right to benefits earlier received. He also opined that the ALJ's determination denying compensability was not factually supportable:

"The February 10, 2003, Agreed Award did contain a finding that the claim was not compensable. There were two findings in the Agreed Award:
"1. Acknowledgment that written claim and application for hearing were not timely filed.
"2. Request for final determination denying compensability.
"[However,] [a] finding in the form of a request does not amount to a factual determination; but furthermore, the Agreed Award contains no stipulated facts on which to base a finding that the claim was not compensable.

. . . .
". . . Late written claim and application for hearing are the only apparent reasons for the denial of the claim.
"A claimant's entitlement to benefits does not depend on the existence of an award. K.S.A. 44-512b assesses a penalty in the form of interest where the employer or insurance carrier fails to pay benefits prior to an award without just cause. K.S.A. 44-5,120 states that such a failure to pay benefits is a fraudulent or abusive act, subject to civil penalty. Clearly, the Workers Compensation Act recognizes a claimant's entitlement to benefits prior to an award. Likewise, the denial

of an award does not necessarily extinguish a claimant's preexisting entitlement to benefits."

Harness then expressed a possible basis for Brotherhood Mutual's reimbursement, *i.e.*, that Anderson's injury did not arise out of and in the course of employment:

"If an award denied benefits because the injury did not arise out of and in the course of employment, then the claimant would not have been entitled to workers compensation benefits received for that injury. In the present case, *you and the claimant's counsel may submit to the administrative law judge a modification to the agreed award that specifies that the injury did not arise out of and in the course of employment.* If such a modification is approved, you may renew your request for fund reimbursement based on the new findings." (Emphasis added.)

*Claimant Kent*

According to an Award dated November 18, 2002, the parties stipulated to the following facts:

"1. [Kent] claims personal injury by accident in Shawnee County, Kansas.

"2. [Kent] claims said accidental injury occurred on or about January 22, 1991.

"3. Respondent/insurance carrier admit [that Kent] met with personal injury by accident on or about the alleged date of accident.

"4. Respondent/insurance carrier admit the relationship of employer-employee existed on the date of the accidental injury.

"5. Respondent/insurance carrier admit that the parties are governed by the Kansas Workers Compensation Act.

"6. Respondent/insurance [carrier] admit that proper notice of the alleged accident was made.

"7. Trinity Universal Insurance Company was the insurance carrier for the respondent on the date of the accidental injury.

"8. The parties stipulate that the average weekly wage on January 22, 1991, was $482.65.

"9. Medical treatment has been furnished in the total amount of $17,616.00. There is no claim by the claimant for any past due or out of pocket medical reimbursement.

"10. Temporary total disability compensation has been made in the amount of $87,848.00 representing 316 weeks at the rate of $278.00 per week."

According to the Award, the following four issues, the first three of which were identical to those in Anderson, remained in dispute:

"1. *Whether claimant's accidental injury arose out of and in the course of his employment with respondent?*

"2. Whether timely written claim was served?

"3. What is the nature and extent of claimant's disability and appropriate compensation, if any?
"4. What is the liability of the Kansas Workers Compensation Fund?" (Emphasis added.)

Under "FINDINGS," the ALJ found, among other things, that Kent's claim for compensation should be denied due to his abandonment of his claim, resulting in his failure to prove that his accidental injuries arose out of and in the course of his employment as follows:

"*Claimant has acknowledged under letter dated July 31, 2001 from his attorney that he is abandoning his claim.* This abandonment was confirmed as the result of a pre-hearing settlement conference held on August 1, 2001. As a result of the outcome of that pre-hearing settlement conference counsel for the respondent/insurance carrier had circulated on two separate occasions, an Agreed Award. Neither of these Agreed Awards was returned for filing as requested and respondent/insurance carrier has now sought issuance of [an] Award confirming the abandonment pursuant to Supreme Court Rule 170. *It is therefore found that the claim for compensation should be denied due to claimant's abandonment of his claim resulting in failure to prove that his accidental injuries arose out of and in the course of his employment* and that he served timely written claim." (Emphasis added.)

Under the heading "AWARD," the ALJ concluded: "The Court accepts the stipulation of the parties and makes findings consistent with those outlined above. Accordingly, claimant's claim is denied."

Like Anderson's ALJ, this one also held: "All rights of the parties in this matter have been determined except the respondent/insurance carrier's right to proceed on securing the reimbursement."

Trinity Universal then sought reimbursement of its $105,464 from the Director. In a letter dated April 17, 2003, Harness denied reimbursement on two bases: (1) no full hearing had occurred and (2) similar to his rationale regarding Anderson, claimant Kent would not lose his original entitlement merely through a subsequent untimely service of written claim or abandonment.

"First, it is questionable whether the November 18, 2002, award amounts to a full hearing. This is an award by default, initiated by the respondent, when the claimant was unavailable or unwilling to participate in a regular hearing. *The award contains no substantive findings on the compensability issues of injury arising out of and in the course of employment* or timely written claim. The award denied benefits simply because the claimant was not there to prove his case.

"Even if I assumed this was a full hearing, I cannot determine that the claimant was entitled to **less** than the benefits previously paid. A worker's entitlement to benefits does not depend on the existence of an award. *Conversely, a default denial, such as in this case, that does not substantively address any compensability issues, fails to establish that the worker was never entitled to benefits."* (Emphasis added.)

The employers and their insurance carriers in both matters then filed petitions for writs of mandamus, asking the trial court to compel reimbursement from the Director under K.S.A. 44-534a. Harness filed motions to dismiss, claiming that the trial court lacked subject matter jurisdiction and that mandamus was improper because plaintiffs were not entitled to the relief requested as a matter of law. As Harness had done in his letters denying the claims for reimbursement, he also alleged that there had not been a full hearing on the Kent claim and there had not been a determination of overpayment on either claim, both of which he asserted were required by K.S.A. 44-534a. Harness was succeeded by Paula Greathouse as Director.

After consolidating the two actions, the trial court made findings of fact primarily by adopting the stipulations of the parties before the ALJs. It also added findings of fact in the Anderson claim:

"6. *The Administrative Law Judge found that Anderson had not timely filed a written claim, and that a timely application for hearing [had] not been made. Anderson's claim was denied.*

"7. Petitioners requested that Respondent certify the amounts it had voluntarily paid to Anderson, to the Commissioner of Insurance for reimbursement pursuant to K.S.A. 44-534a(b).

"8. Respondent has declined to certify said amounts stating that denial of Anderson's claim was the result of an untimely application for hearing and a late written claim, and that there was no finding that Anderson was not entitled to the benefits when paid.

"9. The relief Petitioners seek is enforcement of a provision of the Kansas Workers' Compensation Act, specifically, K.S.A. 44-534a.

"10. That upon application for reconsideration of the director's denial of certification for reimbursement, *the director indicated that if the parties wanted to stipulate that the injuries for which compensation was paid did not arise out of and in the course of employment, and obtain an amended order from the Administrative Law Judge to that effect, then the director would reconsider the application for certification."* (Emphasis added.)

For the Kent claim the trial court added the following findings of fact:

"6. *The Administrative Law Judge denied Kent's claim because he found that Kent had abandoned it, and as a result [1] failed to prove that his accidental injuries arose out of and in the course of his employment, and that [2] he failed to serve a timely written claim.*

"7. Petitioners requested that Respondent certify the amounts they had paid to, or on behalf of, Kent, to the Commissioner of Insurance for reimbursement pursuant to K.S.A. 44-534a(b).

"8. Respondent has declined to certify said amounts stating that denial of the claim was the result of abandonment, and that there was no finding that Kent was not entitled to the benefits when paid.

"9. The relief Petitioners seek is enforcement of a provision of the Kansas Workers' Compensation [Act], specifically, K.S.A. 44-534a." (Emphasis added.)

The trial court found that it had jurisdiction over mandamus actions, though a writ of mandamus should not issue unless a defendant's legal duty is clear. The court agreed with the Director's argument that K.S.A. 44-534a(b) requires a full hearing, which occurs "when an administrative law judge enters an award after a preliminary hearing has been held. *Sawyer v. Oldham's Farm Sausage Co.*, 247 Kan. 327, 333 (1990)." The court also held there was no determination that the claimants had been paid more in benefits than those to which they were entitled. It concluded:

"It is clear that an employer would be entitled to reimbursement if it was determined *at a full hearing* that the injured worker was not entitled to receive benefits. However, there is nothing present in case law or statutory interpretation/ language that suggests reimbursement is appropriate when a full hearing has not been held. Additionally, there has been no determination that Petitioners paid more in benefits than the claimants were entitled to. Since Petitioners have failed to establish that the requirements of K.S.A. 44-534a(b) have been met, the Court cannot compel Respondent to certify a claim for reimbursement—her legal duty to do so is not clear. Therefore, Petitioners are not entitled to mandamus relief as a matter of law."

## ANALYSIS

The Director argues, as she did to the trial court, that the plaintiffs have failed to meet two conditions for reimbursement in K.S.A. 44-534a: (1) there had been no full hearing conducted in the Kent case; and (2) there had not been a determination of "no

entitlement to benefits" on either claim. She also reiterates that the trial court has no jurisdiction over workers compensation matters and, even if so, mandamus is inappropriate because she has no legal duty to reimburse which she can be compelled to perform.

Plaintiffs respond that the functional equivalent of a full hearing was conducted under the facts of the Kent case and that a formal specific finding of "no entitlement to benefits" is unnecessary in both claims. According to plaintiffs, the trial court did have jurisdiction and mandamus is appropriate because it will compel the Director to fulfill her statutory duty of reimbursement of benefits paid to the two claimants.

Our analysis of the first two issues requires us to interpret the statute, K.S.A. 44-534a. The trial court agreed with the Director's interpretation. Interpretation of a statute is a question of law, however, and our review is unlimited. Accordingly, when determining a question of law, we are not bound by the decision of the trial court. *Murphy v. Nelson,* 260 Kan. 589, 594, 921 P.2d 1225 (1996). We do acknowledge our statement in the workers compensation case of *Foos v. Terminix,* 277 Kan. 687, 692-93, 89 P.3d 546 (2004), concerning an agency's interpretation:

" ' "The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts." ' "

Before addressing the specifics of K.S.A. 44-534a, we need to review some of the general tenets of workers compensation law as contained in K.S.A. 44-501. If personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the Workers Compensation Act. See K.S.A. 44-501(a); *Titterington v. Brooke Ins.,* 277 Kan. 888, 89 P.3d 643 (2004). However, the burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the

claimant's right depends. K.S.A. 44-501(a). " 'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2003 Supp. 44-508(g).

The statute at issue, K.S.A. 44-534a, states:

"(a) (1) After an application for a hearing has been filed pursuant to K.S.A. 44-534 and amendments thereto, the employee or the employer may make application for a preliminary hearing, in such form as the director may require, on the issues of the furnishing of medical treatment and the payment of temporary total disability compensation. At least seven days prior to filing an application for a preliminary hearing, the applicant shall give written notice to the adverse party of the intent to file such an application. Such notice of intent shall contain a specific statement of the benefit change being sought that is to be the subject of the requested preliminary hearing. If the parties do not agree to the change of benefits within the seven-day period, the party seeking a change in benefits may file an application for preliminary hearing which shall be accompanied by a copy of the notice of intent and the applicant's certification that the notice of intent was served on the adverse party or that party's attorney and that the request for a benefit change has either been denied or was not answered within seven days after service. Copies of medical reports or other evidence which the party intends to produce as exhibits supporting the change of benefits shall be included with the application. The director shall assign the application to an administrative law judge who shall set the matter for a preliminary hearing and shall give at least seven days' written notice by mail to the parties of the date set for such hearing.

"(2) Such preliminary hearing shall be summary in nature and shall be held by an administrative law judge in any county designated by the administrative law judge, and the administrative law judge shall exercise such powers as are provided for the conduct of full hearings on claims under the workers compensation act. Upon a preliminary finding that the injury to the employee is compensable and in accordance with the facts presented at such preliminary hearing, the administrative law judge may make a preliminary award of medical compensation and temporary total disability compensation to be in effect pending the conclusion of a full hearing on the claim, except that if the employee's entitlement to medical compensation or temporary total disability compensation is disputed or there is a dispute as to the compensability of the claim, no preliminary award of benefits shall be entered without giving the employer the opportunity to present evidence, including testimony, on the disputed issues. A finding with regard to a disputed issue of whether the employee suffered an accidental injury, whether the injury arose out of and in the course of the employee's employment, whether notice is given or claim timely made, or whether certain defenses apply, shall be considered jurisdictional, and subject to review by the board. Such review by the board shall

not be subject to judicial review. If an appeal from a preliminary order is perfected under this section, such appeal shall not stay the payment of medical compensation and temporary total disability compensation from the date of the preliminary award. If temporary total compensation is awarded, such compensation may be ordered paid from the date of filing the application, except that if the administrative law judge finds from the evidence presented that there were one or more periods of temporary total disability prior to such filing date, temporary total compensation may be ordered paid for all periods of temporary total disability prior to such date of filing. The decision in such preliminary hearing shall be rendered within five days of the conclusion of such hearing. Except as provided in this section, no such preliminary findings or preliminary awards shall be appealable by any party to the proceedings, and the same shall not be binding in a full hearing on the claim, but shall be subject to a full presentation of the facts.

"(b) If compensation in the form of medical benefits or temporary total disability benefits has been paid by the employer or the employer's insurance carrier either voluntarily or pursuant to an award entered under this section and, upon a full hearing on the claim, the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a and amendments thereto, for all amounts of compensation so paid which are in excess of the amount of compensation the employee is entitled to less any amount deducted from additional disability benefits due the employee pursuant to subsection (c) of K.S.A. 44-525, and amendments thereto, as determined in the full hearing on the claim. The director shall determine the amount of compensation paid by the employer or insurance carrier which is to be reimbursed under this subsection, and the director shall certify to the commissioner of insurance the amount so determined. Upon receipt of such certification, the commissioner of insurance shall cause payment to be made to the employer or the employer's insurance carrier in accordance therewith. No reimbursement shall be certified unless the request is made by the employer or employer's insurance carrier within one year of the final award."

## Issue 1: *Did the trial court err in holding there was not a full hearing on employee Kent's claim?*

Trinity Universal concedes that K.S.A. 44-534a(b) speaks of "full hearings" in a number of places:

"If compensation . . . has been paid by the employer or the employer's insurance carrier . . . and, upon a *full hearing on the claim,* the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers' compensation fund . . . for all amounts of compensation so paid which are in excess of the

amount of compensation the employee is entitled to . . . as determined in the *full hearing on the claim."* (Emphasis added.)

Trinity Universal also concedes that the trial court found there had not been a full hearing on the Kent claim. It argues, however, that the functional equivalent of one occurred. We therefore examine what is meant by "full hearing."

" 'The fundamental rule of statutory construction is that the intent of the legislature governs. [Citation omitted.] When construing a statute, a court should give words in common usage their natural and ordinary meaning.' " *Sawyer v. Oldham's Farm Sausage Co.*, 246 Kan. 327, 331, 787 P.2d 697 (1990) (quoting *Hill v. Hill,* 13 Kan. App. 2d 107, 108, 763 P.2d 640 [1988]). Black's Law Dictionary 725 (7th ed. 1999) defines "full hearing" as: "A hearing at which the parties are allowed notice of each other's claims and are given ample opportunity to present their positions with evidence and argument."

This court has also examined the word "hearing." In *Clairborne v. Coffeyville Memorial Hospital*, 212 Kan. 315, 319, 510 P.2d 1200 (1973), we stated:

"It is true that the term 'hearing' has both a narrow and a broad meaning. As applied to administrative proceedings the term 'hearing' is usually construed as meaning the whole proceeding including the ultimate decision therein. (*Chicago Ry. Equipment Co. v. Blair*, (C.C.A.), 20 F.2d 10, 11.) The decisions recognize the term 'hearing' as relating not to physical presence at the taking of evidence, but to certain procedural minimums to ensure an informed judgment by one who has the responsibility of making the final decision and order. [Citations omitted.]" 212 Kan. at 319.

We agree with Trinity Universal that in Kent's claim, the equivalent of a "full hearing" was held the day of the Award, November 18, 2002. Stated another way, that day essentially included "a hearing at which the parties were allowed notice of each other's claims and were given ample opportunity to present their positions with evidence and argument." The Award itself begins by stating: "Claimant appears by and through his attorneys, Dan E. Turner and Phillip L. Turner. Respondent/insurance carrier appear by and through their attorney, Matthew S. Crowley. The Kansas Workers' Compensation Fund appears through its attorney, Bob Storey."

Moreover, the attorneys streamlined their proceedings through 10 stipulated facts. See *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 709, 512 P.2d 438 (1973) (A stipulation is an agreement, admission, or concession made in judicial proceedings by the parties thereto or their attorneys.); 73 Am. Jur. 2d, Stipulations § 17 (Stipulations render proof unnecessary and take the place of evidence.). They also identified four specific issues for the ALJs determination, including at least one potentially dispositive of Kent's entire claim: whether his accidental injury arose out of and in the course of his employment with plaintiff. In addition to the parties' stipulations, the ALJ further found that Kent acknowledged in a letter dated July 31, 2001, from his legal counsel that he was abandoning his claim, which abandonment was confirmed at yet another hearing, the pre-hearing settlement conference previously held on August 1, 2001.

After the ALJ accepted the stipulations and made factual findings, he denied the claim. He specifically concluded that "[a]ll rights of the parties in this matter have been determined except the respondent/insurance carrier's right to proceed on securing the reimbursement" pursuant to K.S.A. 44-534a. This determination of all issues between these particular parties is consistent with our holding in *Clairborne v. Coffeyville Memorial Hosp.*, 212 Kan. at 319 (hearing usually construed as meaning the whole proceeding including the ultimate decision therein). This determination of all issues is also consistent with K.S.A. 44-534a(a), which provides that preliminary findings and preliminary awards "shall not be binding in a full hearing on the claim, *but shall be subject to a full presentation of the facts.*" (Emphasis added.)

The Director responds, however, that she agrees with the trial court's reliance upon *Sawyer v. Oldham's Farm Sausage Co.*, 246 Kan. 327. There, this court considered the meaning of "a full hearing on the claim" as set out in K.S.A. 1989 Supp. 44-534a. The claimant was awarded temporary total disability benefits in a preliminary hearing held in January 1983. A regular hearing was then held, and the ALJ made his award on September 19, 1985. The claimant argued on appeal that an award did not become final until review by the Director pursuant to K.S.A. 44-551. We rejected this

argument stating: "The phrase, 'the conclusion of a full hearing on the claim,' appearing in K.S.A. 1989 Supp. 44-534a, refers to the date of the award entered by the administrative law judge as a result of the hearing held after the preliminary hearing." 246 Kan. at 333. Under *Sawyer*, the date of the conclusion of the full hearing is the date of the final award.

We disagree with the applicability of *Sawyer* to the case at hand. The "final award" discussed in *Sawyer* never materialized here because the ALJ concluded that Kent had abandoned his claim. Abandonment has been defined as the intentional and voluntary relinquishment of a known right. *In re Marriage of Galvin*, 32 Kan. App. 2d 410, 413, 83 P.3d 805 (2004). Here, this was the right of an injured employee to pursue a workers compensation claim with the hope of receiving benefits. We acknowledge that at oral arguments the Director's counsel suggested the "full hearing" could still have been held and Kent could have been forced to attend so the statutory requirement could have been satisfied. We join the plaintiffs in disagreeing that a claimant can be forced to attend and, furthermore, that such an exercise was necessary under these facts.

We also observe that the trial court's interpretation—and the Director's—appears to be inconsistent with other provisions in the statute. K.S.A. 44-534a(a) is replete with legislative efforts to promote cooperation between the claimant and the employer and providing "preliminary" benefits to the claimant as soon as possible, with ultimate determinations to be made at a later date. Some examples include: once the claimant notifies the respondent of intent to file an application for preliminary hearing, the respondent may eliminate the need for such a hearing by agreeing to the benefits; preliminary findings or awards are not binding in the later, full hearing but shall be "subject to a full presentation of the facts."

Similarly, preliminary findings or awards are usually not appealable; however, if appealable, the appeal shall not stay the payment of medical compensation and temporary total disability compensation from the date of the preliminary award. As the Director herself admits in her brief on a closely-related issue: "The intent of K.S.A. 44-534a is to encourage employer/insurance providers to provide benefits when they are needed, and to avoid the necessity

of withholding treatment or benefits while awaiting a preliminary hearing."

Yet the trial court's interpretation discourages such cooperation by the employer and its insurance carrier. The Director's counsel admitted at oral arguments that neither the employer nor its carrier can seek recourse under K.S.A. 44-534a against the employee for payments made. See *Wasson v. United Dominion Industries,* 266 Kan. 1012, 1021, 974 P.2d 578 (1999). Accordingly, if the employer or its carrier is unable to obtain reimbursement from the State under this statute, it has no remedy. In Kent's situation, the carrier will lose $104,000. Consequently, we agree with the plaintiffs about the hazards of the trial court's interpretation:

"[I]f employers are told they will not receive reimbursement of monies paid to injured workers until a 'final hearing,' employers will be reluctant to pay any benefits from the date of injury until final hearing out of concern that they will have an injured employee like Kent who abandons his claims deep into the process and then they cannot recover. No employer would voluntarily provide benefits because they will have lost their assurance of reimbursement and preliminary hearings could no longer be conducted upon a summary basis."

The trial court's interpretation not only discourages cooperation, but it also places the employer and its insurance carrier in a difficult position. As mentioned, if they cooperate with the claimants and attempt to pay benefits early in the process, they run the risk that, like Kent, the claimant will abandon and they will have no ability to obtain reimbursement from the Director. On the other hand, if they refuse to cooperate and refuse to pay benefits early, they run the risk of sanctions. In Harness' letter of March 25, 2003, he observed that failure to pay compensation can be a fraudulent or abusive act. See K.S.A. 44-5,120(d)(10), (18), and (19). The employer may then be subject to penalties (K.S.A. 44-5,120[g][1]) and costs (44-5,120[f]). As Harness also observed, the employer may be required to pay interest. See K.S.A. 44-512b.

For these reasons, we conclude "full hearing" means an exploration of the issues resulting in the ultimate decision, *e.g.,* whether the claimant is entitled to workers compensation benefits. It includes a situation where there has been an evidentiary hearing before the ALJ, as well as where there has been procedural default,

*e.g.*, abandonment. Under Kent's circumstances, there is nothing to be gained by requiring the Director's version of a "full hearing."

Issue 2: *Did the trial court err in holding there was no administrative determination that plaintiffs paid more in benefits than those to which claimants were entitled?*

K.S.A. 44-534a(b) also provides that the right to reimbursement requires that "the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed. . . ." The Director instructed the plaintiffs, and the trial court held, that neither of the ALJ's had decided that the claimants were never entitled to the benefits. Before this court, the Director again argues that because the ALJ's failed to make "no entitlement" determinations, reimbursement cannot be made. She also argues that once an entitlement has been established, a claimant's subsequent failure to timely file notice of claims or applications for preliminary hearing does not eliminate rights to those benefits earlier received.

We disagree with the Director's first argument, which makes her second argument moot.

*Anderson: arose out of and in the course of employment*

In denying the request for reconsideration, the Director admitted in his March 25, 2003, letter:

"If an award denied benefits because the injury did not arise out of and in the course of employment, *then the claimant would not have been entitled to workers compensation benefits received for that injury.* In the present case, you and the claimant's counsel may submit to the administrative law judge a modification to the agreed award that specifies that the injury did not arise out of and in the course of employment. If such a modification is approved, you may renew your request for fund reimbursement *based on the new findings.*" (Emphasis added.)

The trial court, in Finding No. 9, characterized this agreed-upon modification by the attorneys as a "stipulation."

The trial court further found in its Finding No. 6 that "[t]he Administrative Law Judge found that Anderson had not timely filed a written claim, and that a timely application for hearing [had] not been made." The court's finding is incomplete because the deter-

mination had already been made by the ALJ that Anderson's injury did not arise out of and in the course of her employment.

The ALJ found that "[t]he parties have requested that the Court enter a final determination denying compensability based upon *finding all disputed issues against claimant and in favor of respondent/insurance carrier."* (Emphasis added.) Disputed Issue No. 1 expressly stated: "[w]hether claimant's accidental injury arose out of and in the course of her employment with respondent?" The ALJ then granted the parties' request: "This Agreed Award should be treated as any other award as if this matter was fully litigated. *All other rights of the parties in this matter have been adjudicated except* that the respondent/insurance carrier's right to proceed on securing the reimbursement from the Kansas Worker's Compensation Fund." (Emphasis added.) Issue No. 1 was clearly resolved against Anderson: her injury did not arise out of and in the course of her employment.

Consistent with Harness' letters to Brotherhood Mutual denying the claim for reimbursement, Director Greathouse now argues on appeal, however, that "[a] finding in the form of a request does not amount to a factual determination." She also argues that "the Agreed Award contains no stipulated facts on which to base a finding that the claim was not compensable." The first problem with the Director's position is that it incorrectly shifts the statutory burden of proof to the employer. Under workers compensation law, it is the claimant's burden of proof to establish his or her right to an award of compensation and to prove the various conditions on which his or her right depends. See K.S.A. 44-501(a); *Titterington v. Brooke Insurance,* 277 Kan. 888, 894, 89 P.3d 643 (2004). Anderson has failed to do so because there is no finding by the ALJ that she *was* entitled; moreover, the stipulated facts do not independently support a finding of entitlement. Until she does make such a showing, there is no entitlement.

The second problem with the Director's position is that Anderson and her counsel expressly asked for an adverse determination of the issue of whether her "accidental injury arose out of and in the course of her employment," which is tantamount to a stipulation that she is unable to establish this essential element of her

claim. See *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 512 P.2d 438, (1973) (Stipulation has been defined as an agreement, admission, or concession made in judicial proceedings by the parties thereto or their attorneys.). It is at least as effective as a finding of fact—based upon the evidence—that the claim was not compensable. See 73 Am. Jur. 2d, Stipulations § 17 (Stipulations render proof unnecessary and take the place of evidence.). Indeed, the Director's predecessor, Harness, acknowledged as much when he invited both sides' attorneys to stipulate that the injury did not arise out of and in the course of employment, to obtain ALJ approval of the stipulation, and then for the insurance carrier's counsel to resubmit the request for reimbursement "based upon the new *findings.*" (Emphasis added.)

Once this particular issue has been decided against Anderson, she cannot meet her burden of proof to establish her right to an award of compensation and to prove the various conditions on which her right depends. Failing to prove that an injury arose out of and in the course of employment is fatal to a workers compensation claimant, because the employer is liable only if "personal injury by accident arising out of and in the course of employment is caused to an employee." See K.S.A. 44-501(a); *Jacobs v. Goodyear Tire & Rubber Co.*, 196 Kan. 613, 617, 413 P.2d 986 (1966); *Gamble v. Board of Public Utilities*, 137 Kan. 227, 19 P.2d 729 (1933). Accordingly, by the Director's own admission, with a showing that the injury did not arise out of and in the course of employment, the claimant has failed to meet her burden. Anderson is "not entitled" to the benefit.

*Kent: arose out of and in the course of employment*

The same rationale holds true for Kent, but even more so. The trial court expressly found in Fact No. 6 that "[t]he Administrative Law Judge denied Kent's claim because he found that Kent had abandoned it and as a result failed to prove that his accidental injuries arose out of and in the course of employment. . . ."

The trial court was correct, *i.e.*, the ALJ did find that "the claim for compensation should be denied due to claimant's abandonment of his claim *resulting in failure to prove that his accidental injuries*

*arose out of and in the course of his employment. . . ."* (Emphasis added.) However, the trial court then found that "no lack of entitlement had been proven." These two findings are contradictory, and the latter is clearly incorrect. As noted earlier in the opinion, when the claimant fails to prove his accidental injuries arose out of and in the course of his employment, then by the Director's own admission, *"the claimant would not have been entitled to workers compensation benefits received for that injury."* Simply put, Kent quit before he could prove this required condition. See K.S.A. 44-501(a).

Although *Wasson v. United Dominion Industries,* 266 Kan. 1012, 1021, 974 P.2d 578 (1999), is not directly on point, we find it of some assistance. There, the claimant received $43,925.37 in temporary total disability compensation, medical expenses, and medical management expenses. He then abandoned his claim. At a later informal hearing the employer's insurance carrier, U.S.F.&G., asserted to the ALJ that Wasson's claim for compensation must be denied because Wasson failed to submit evidence that he had sustained a compensable injury. We stated:

"The ALJ noted that a claimant (worker) has the burden of proof that he or she is entitled to compensation, and the claimant in this case had failed to meet his burden because he presented no evidence. The ALJ determined from the evidence submitted by U.S.F.&G. that Wasson had not sustained a compensable injury on March 9, 1993. The ALJ totally disallowed the compensation paid and concluded that, pursuant to K.S.A. 1992 Supp. 44-534a(b), the Fund was liable to the employer and its insurance carrier in the sum of $43,925.37." 266 Kan. at 1016.

This court then held that the claimant's failure to present evidence, coupled with U.S.F.&G.'s evidence of Wasson's preexisting back disability and a physician's opinion that Wasson suffered no discernible aggravation of his preexisting disability as a result of the injury, "clearly supports the ALJ's finding that Wasson did not receive an injury while working for his employer on March 9, 1993." 266 Kan. at 1020-21. Accordingly, we held that U.S.F.&G. was entitled to reimbursement by the Fund in accordance with K.S.A. 1992 Supp. 44-534a(b). 266 Kan. at 1021.

Similarly, both Anderson and Kent either abandoned their claims or otherwise conceded they could not prove an essential element of their claims to establish their right to compensability. By the claimants' failure to prove they were due any benefits, it logically follows that the plaintiffs have met the statutory requirement that "the amount of compensation to which the employee is entitled is . . . totally disallowed." Consequently, they are entitled to reimbursement under the statute.

Issue 3: *Did the trial court err in refusing to issue the writs of mandamus?*

*Jurisdiction over mandamus*

As a preliminary matter, we observe that the Director's counsel alleged during oral arguments that the trial court did not have jurisdiction to address a mandamus action in a workers compensation matter. This issue was presented to the trial court, which found jurisdiction, but neither party briefed the issue to this court. Despite its late appearance before us, we consider the jurisdiction issue. *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999). (An objection based on lack of subject matter jurisdiction may be raised at any time.).

The existence of jurisdiction is a question of law over which this court's scope of review is unlimited. *In re Marriage of Wherrell*, 274 Kan. 984, 987, 58 P.3d 734 (2002).

During arguments, the Director's counsel cited *Jones v. Continental Can Co.*, 260 Kan. 547, 920 P.2d 939 (1996), as support for her position. The issue in *Jones* was whether the 3-day mailing rule of Supreme Court Rule 1.05(c) (1995 Kan. Ct. R. Annot. 5)—as provided by reference to K.S.A. 60-206(e)—could be applied to preclude the dismissal of the appeal sought under K.S.A. 1995 Supp. 44-556(a). This court held that it could not, stating:

"The Workers Compensation Act provides its own time limit for appeal without reference to Chapter 60 and in preemption of K.S.A. 1995 Supp. 77-613. The statutory basis for applying the provisions of the Code of Civil Procedure to workers compensation appeals was removed by the legislature. This leads us to a strict application of the wording of K.S.A. 1995 Supp. 44-556(a) and the dismissal of this appeal as untimely.

"[W]e are back to the clear statement and rule of *Bushman Construction Co. v. Schumacher,* 187 Kan. 359, 362, 356 P.2d 869 (1960), which states:
'Our decisions are replete that the Workmen's Compensation Act undertook to cover every phase of the right to compensation and of the procedure for obtaining it, which is substantial, complete and exclusive, and we must look to the procedure of the act for the methods of its administration. Rules and methods provided by the code of civil procedure not included in the act itself are not available in determining rights thereunder.' " 260 Kan. at 557.

In reply, the plaintiffs point out that the trial court ruled in their favor on the jurisdiction issue. The court stated:

" 'In general, the changes to the workers compensation code were designed to shift the de novo review of the district court to the newly created Workers Compensation Board of Appeals. The appellate review of Board decisions was designed to be filed directly with the Court of Appeals.' *Riedmiller v. Harness,* 29 Kan. App. 2d 941, 946 (2001)[Citation omitted.]. However, Petitioners argue that their request is not an appeal, but rather a request for mandamus pursuant to K.S.A. 60-802(a). District courts clearly have jurisdiction over mandamus actions."

Plaintiffs also observe, and the Director agrees, that they have no avenue to appeal the Director's determination on reimbursement to the Workers Compensation Board, whose decision could then be reviewed by the Court of Appeals under the Act for Judicial Review and Civil Enforcement of Agency Actions. See *Riedmiller v. Harness,* 29 Kan. App. 2d 941, 945, 34 P.3d 474 (2001). Under such circumstances, the plaintiffs argue mandamus is available as a remedy.

We agree with the trial court's conclusion regarding jurisdiction. As support, we first look to *State, ex rel., v. Unified School District,* 218 Kan. 47, 542 P.2d 664 (1975). There, the apportionment of election expenses among subdivisions of government was covered by one act: K.S.A. 25-2201 through 25-2205. The Act provided that a subdivision aggrieved by the county election officer's decision regarding election expenses had a right of appeal to the state election board. The statute clearly provided that " '[t]he determination of the state election board of any appeal under the provisions of this section shall be conclusive, and shall be the exclusive remedy in such cases.' " 218 Kan. at 49.

Notwithstanding this straightforward language, we held that "[t]he state election board is . . . not the final arbiter of the stat-

ute, despite its language; if the board acts beyond its authority, hence 'illegally,' it is subject to judicial review through a proper action." 218 Kan. at 50. These types of proper actions were described earlier in the court's opinion:

"In *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P.2d 29, while holding that no appeal would lie from the particular order of the board of tax appeals there challenged, we observed:

'However, the courts are always open to hear meritorious complaints against illegal or oppressive acts of non-judicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby; but not by appeal where no statute confers a right of appeal. *In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some appropriate extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto.*' [Citations omitted.]" (Emphasis added.) 218 Kan. at 50.

Similarly, in *Huser v. Duck Creek Watershed Dist. No. 59*, 234 Kan. 1, 668 P.2d 172 (1983), the court addressed the Kansas Watershed District Act, K.S.A. 24-1201 *et seq*. The Act, like the Workers Compensation Act at issue in the instant case, made no provision for appeals to the district court from decisions of the watershed district board of directors. This court nevertheless held: "In the absence of a statutory provision for appellate review of an administrative decision, no appeal is available. However, relief from illegal, arbitrary, and unreasonable acts of the district can be obtained using an extraordinary remedy like mandamus, quo warranto, or injunction." 234 Kan. at 4.

The plaintiffs in the instant case argue, among other things, that the Director acted unreasonably and beyond her authority under the Act when she denied reimbursement. Accordingly, under the rules stated in *Sanborn* and *Huser*, the trial court had jurisdiction to consider the requests for mandamus relief.

*Mandamus as a remedy in the instant case*

The question remains whether the trial court erred in refusing to issue the writs of mandamus and in dismissing the petitions.

A short review of mandamus is in order. Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty re-

sults from the office, trust, or official station of the party to whom the order is directed, or from operation of law. K.S.A. 60-801.

Mandamus is not available to require performance of an act that involves the exercise of discretion by the public official. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 716, 792 P.2d 971 (1990). Nor does it lie to enforce a right which is in substantial dispute. 246 Kan. at 716. It is available only for the purpose of compelling the performance of a clearly defined duty. *Link, Inc., v. City of Hays,* 268 Kan. 372, 375, 997 P.2d 697 (2000).

"The only acts of public officials that the courts can control by mandamus are those strictly ministerial, meaning the public officer or agent is required to perform based upon a given set of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion about the propriety or impropriety of the act to be performed. [Citation omitted.]" 246 Kan. at 717.

The insurance carriers' claims for reimbursement clearly met the requirements of K.S.A. 44-534a(b), *i.e.,* the benefits they paid to claimants were later totally disallowed by the ALJ. Under K.S.A. 44-534a(b), at best the Director only has discretion in determining "the amount of compensation paid by the employer or insurance carrier which is to be reimbursed. . . ." Nowhere does the Workers Compensation Act provide that the Director has the discretion to reverse the findings and conclusions of an ALJ and thereby totally disallow the reimbursement claims as a matter of law. And if such power over an ALJ were to exist, it would logically be the Board's, not the Director's. See *Riedmiller v. Harness,* 29 Kan. App. 2d 941, 44-45, 34 P.3d 474 (2001); K.S.A. 44-551(b)(1) ("All final orders, awards, modifications of awards, or preliminary awards under K.S.A. 44-534a and amendments thereto made by an administrative law judge shall be subject to review by the board. . . ."); K.S.A. 44-555c(a) ("The board shall have *exclusive jurisdiction* to review all decisions, findings, orders and awards of compensation of administrative law judges under the workers compensation act." [Emphasis added.]).

Since the ALJs in both matters found that compensation should be totally disallowed, Greathouse's statutory duty to certify these claims for reimbursement is clear. As a result, under the rationale

of *Liberal-NEA v. Board of Education*, 211 Kan. 219, 505 P.2d 651 (1973), the trial court should have issued the writs of mandamus. There, we concluded that the plaintiff was the statutory exclusive representative of the teachers and was entitled to be recognized as such. Accordingly, the defendant board of education had a statutory duty to enter into professional negotiations with the plaintiff under K.S.A. 72-5423. We held:

"In view of the conclusion which we have reached in this case that the defendant board of education had *a statutory duty* to enter into negotiations with the plaintiff Liberal-NEA, *it follows that a writ of mandamus should have been granted by the trial court.* (K.S.A. 60-801; *Woelk v. Consolidated School District,* 133 Kan. 346, 299 Pac. 648.)" (Emphasis added.)

This court then reversed and remanded with directions to the trial court to issue an order of mandamus requiring the defendant board of education to engage in collective negotiations with the plaintiff. 211 Kan. at 233.

Similarly, in the instant case, the decision of the trial court is reversed and the case is remanded for issuance of writs of mandamus ordering the Director to carry out her statutory duties required by K.S.A. 44-534a(b), *i.e.,* to determine the amount of compensation paid by the insurance carriers to claimants and to certify to the Commissioner of Insurance the amount so determined for their reimbursement.